JONES, Justice
(dissenting).
It is-always with reluctance that I disagree with my brethren. However, this was a four to' four decision as shown by the controlling' opinion, and I am forced to record1 the reasons which influenced those of us not feeling as the writer of the main o'pfeion and; those concurring with him.
With all deference, we first desire to direct- attention to some statements of the controlling-opinion. We do this, not in a sense of criticism, but because we consider these . statements,. except the first mentioned, as lending support to our position.
The ma.in. opinion states twice that the appelleé wáis ,on düty at all times. It is true that an officer of the corporation testified that appellee was employed for twenty-four hours a day for 365 days a year except in leap year when it was 366 days. From this statement of the employer, it is assumed by the controlling opinion that regardless of where the appellee was, or why, or when, he was on duty. Statements such as that made by the officer of the corporation must of necessity be construed reasonably and in line with common knowledge and reality. We all know that a man would not be on duty twenty-four hours for 365 days of the year. If he were, how would he get any sleep ? How would he go to the barber shop? How would he go to the doctor? Would these matters of interest only to appellee, personally, be performed as a duty for the company? This statement by the superior of the appellee could only be construed reasonably and realistically to mean that appellee was subject to call at all times. Certainly there would be times when he would be tending to matters of his own with which the employer was not concerned.
The controlling opinion admits that the primary reason for going to Corinth from Holly Springs was to visit appellee’s grandchild.
There is involved in this case, as we see it, both the doctrine of dual purpose and deviation. We are of the opinion that the trip from Holly Springs to Tupelo by way of Corinth is the controlling factor. From Holly Springs to Tupelo by the route selected was 106 miles and directly from Holly Springs to Tupelo on Highway 78 was 59 miles. Certainly when you compare- the distance of 106 miles with 59 miles, it cannot be said to be a minor deviation. This Court has cited, and the controlling opinion cites with approval, Judge Cardozo’s test as to the dual-purpose doctrine, and we call particular attention to these portions of said test, stated by Judge Cardozo, and cited by many, many courts:
* * * if the journey would have gone forward though the business errand had *185 been dropped, and would have been can-celled upon failure of the private purpose, though the business errand was undone, the travel is then personal, and personal the risk. (Marks’ Dependents v. Gray et al., 167 N.E. 181 at 183 (1929)).
******
A different question would arise if performance of the service were to occasion a detour, and in the course of such detour the injuries were suffered. (Marks’ Dependents v. Gray et al., 167 N.E. 181 at 182 (1929)).
Certainly, if personal motives compel a detour, a different question would arise.
The facts here show the deceased and his wife, the claimant, came from Memphis to Holly Springs to visit the wife’s mother and father and planned or had planned a trip to Corinth for the four of them to visit with the grandchild of claimant and her husband, and the great grandchild of claimant’s mother and father. It seems the child was very young, and they had been invited to Corinth to see the baby and participate in a party on Sunday. Here was the great grandfather, the great grandmother, the grandfather and the grandmother making a trip to Corinth to see a new grandson. What could be more typical of a “family gathering” celebrating those matters entirely personal to the grandparents and great grandparents ?
The claimant herself testified that the four of them had made plans to visit the home of the parents of the baby. They were having a little party for the baby although it was not his birthday. She said that they would probably have gone to Corinth to visit regardless of whether any motel signs were to be checked (this was the business claimed). She further stated that the visit to the son and his family in Corinth was “the big primary object” of the trip there.
Larson’s Workmen’s Cqmpensation Law, Vol. 1, section 18.12, page 294.5-294.10 makes this statement:
The basic dual-purpose rule, accepted by the great majprity -of jurisdictions, may be summarized as follows.: when a trip serves both business and personal purposes, it is a personal trip if the trip would have been made in spite of the failure or absence of the business purpose and would have been dropped ip the event of failure o.f the private purpose, though the business errand remained undone; it is a business trip if a trip of this kind would have been made in spite of the failure or absence of the private purpose, because the service to be performed for the employer would have caused the journey to be made by someone even if it had not coincided with the employee’s personal journey.
It is our belief that when tlje claimant and her husband decided to leave the direct rbute at Holly Springs and travel 14 miles •'northerly, 43 miles east and 49 miles southwesterly rather than 59 miles ■ directly, there was a detour and a deviation.
The controlling opinion takes the position that there was no deviation, but merely the taking of an alternate route..
As to this proposition, Lars.on, among other things, says in section 19.50 pages 294.89-294.90:
Taking a somewhat roundabout route, or being off the shortest line between the origin and destination, does not in itself remove the traveler, from the course of employment; if must be. shown in addition that the deviation was aimed at reaching some specific personal objective.
If the employee for some reason having nothing to do with a private purpose, but perhaps merely in the exercise of his *186 own judgment or preference as to the most desirable route, takes a route other than that prescribed by his employer, this should not be considered a deviation. A forthright illustration is White v. Morris, 182 Pa.Super. 454, 127 A.2d 748 (1956), in which the employee, although instructed to travel by turnpike, used Route 30 instead. Compensation was awarded. Tested by this rule, the dissent in Bayless v. Sparkman Livestock Sales, 350 P.2d 333 (Okla.1960) seems sounder than the majority decision. The truck driver here was directed to go from Elk City, Oklahoma, to Fort Worth, Texas, and then to Tupelo, Mississippi, by way of Jackson, Missouri, where the employer had an arrangement with a local motel. Instead the driver proceeded by way of Sherman, Texas, where he was found dead from asphyxiation in a tourist court room. The majority held the deviation took him outside the course of his employment. The dissent stated:
“An employee is not outside the course of his employment where, as a matter of judgment and not in pursuit of a personal mission he takes a route different from that suggested by his employer.”
Larson also says in section 19.50 page 294.92:
Once it is accepted that an accident off the main or authorized route is a deviation only if it is motivated by a personal objective, it follows that when the evidence shows no more than the employee’s being somewhat off the direct route, with no explanation of his presence there, a departure from the course of employment should not be found.
Also, in Larson section 19.50 page 294.93 it says:
Moving across the spectrum of increasing degrees of private motivation, we next encounter the type of case in which there is some mild infusion of personal interest in the taking of the longer route, but in which the entire trip is still one possible way of getting from the starting point to the business destination and the added distance is not great enough to justify treating the whole trip as a deviation. The principle is similar to that at work in the preceding sub-section : by far the greatest part of the distance being covered is for business purposes. (emphasis added).
By examination of the map in the controlling opinion, it will be seen that it is 42 miles from Memphis to Holly Springs and 59 miles from Holly Springs to Tupelo. By adding the 42 miles to the 106 miles from Holly Springs to Tupelo by Corinth, we have 148 miles of which only 42 miles is the distance from Memphis to Holly Springs. The mileage from Holy Springs to Tupelo by Corinth is more than the combined mileage from Tupelo to Memphis by Holly Springs.
Further, Larson says in section 19.50 page 294.93:
Finally we come to the type of case in which both elements of unmistakable private purpose and excessive spatial deviation are present, as when an employee deviated 12 miles in order to take his wife and child home. In this case, compensation was denied on the standard ground of substantial deviation for a personal purpose.
The case closest to the facts in this case that we have been able to find is White v. South Carolina State Highway Department, 226 S.C. 380, 85 S.E.2d 290 (1955), cited by Larson under the paragraph quoted above. In that case the claimant was instructed to go from Conway to Sumter. He was authorized to use the employer’s vehicle and to remain over the weekend if necessary. His family lived at Darlington, and it was understood that he might spend the weekend there after going to Sumter and return to Conway Monday morning. He was not specifically instructed as to the *187 route he was to take to Sumter. There were two routes. Claimant travelled one, but when he reached Florence instead of proceeding directly to Sumter, he picked up his wife and child who were visiting in Florence. He turned left in order to take them to their home in Darlington. Between Florence and Darlington he was in a collision and injured. He went out of his way about 12 miles or almost one-third of the total distance. There was no substantial evidence that there was any compensating advantage in the route via Darling-ton, and no finding by the Commission of such. The Commission allowed compensation. The Supreme Court of South Carolina reversed the case and set aside the award on the ground that there was a material deviation, and in support thereof cited parts of Larson, cited by us.
In Durr’s Dependents v. Schlumberger Oil Well Surveying Corp. et al., 227 Miss.606, 615, 86 So.2d 507, 509 (1956) involving a dual-purpose doctrine where compensation was denied, this Court held:
The presence of the files in his automobile was of some benefit to the employer, but it was merely incidental. The sole purpose of the trip was personal to Durr. The files had nothing to do with creating the necessity for the trip. The travel and the risks were personal.
In the instant case, the work which it was claimed would be done by deceased on the trip from Holly Springs to Corinth was the looking at signs of the motel or motels beside the road as they passed and possibly seeing if many or few cars were parked at the motels in Corinth. This was, as in the Durr case, possibly of some benefit to the employer but would have been merely incidental to the detour.
For the foregoing reasons, we respectfully dissent.
BRADY, PATTERSON and ROBERTSON, JJ., join in this dissent.