WEST ESTATE *v.* SOUTHERN BELL TELEPHONE & TELEGRAPH COMPANY

No. 40246 October 15, 1956 90 So. 2d 1

*Travis & Moore,* Jackson; *John B. Farese,* Ashland, for appellants.

*Jas. Stone & Sons,* Oxford; *Hugh N. Clayton,* New Albany, for appellee.

HALL, J.

This is an appeal by Mrs. Hardie West, a widow, and her minor daughter, from a judgment of the Circuit Court of Union County affirming an order of the Workmen's Compensation Commission which affirmed an order of the attorney-referee denying compensation for the death of Evelyn June West, an employee of Southern Bell Telephone and Telegraph Company, a self insurer, which death occurred on November 12, 1954, in the telephone exchange of the Company at New Albany, Mississippi, at a time when she was engaged at work as an operator in the telephone exchange.

There is little if any dispute as to the facts in the case. Miss West had been employed by the Company for approximately eighteen months. She was the childhood sweetheart of Clarence O'Neil Sullivan, whom she had known all her life and with whom she went to school. He was in the United States Navy from November 1950 to July 1954, at which time he was discharged from further service. During this time they kept up a correspondence, but while he was away she started going with Wilbourn Goode in 1953. Goode gave her a ring about Christmas 1953 and it is a fair inference from this record that this was an engagement ring. Upon Sullivan's return home in July 1954 she started going with him and in a short time she stopped going with Goode and returned the ring to him.

At about 9:45 P. M. on the night of November 12, 1954, Goode came into the telephone exchange and at that time there were only two employees present and on duty. One was Miss West and the other was Mrs. Curry. Goode entered the room and said nothing to either of them. Miss West asked him to leave and told him that it was against the rules of the Company for him to be in the building. Goode walked past Mrs. Curry and went up to Miss West. She pulled off her headset and her glasses and again asked him to leave the building. Mrs. Curry asked Miss West what she wanted her to do and she did not answer but was still insisting on Goode's leaving the room. Goode then said to Mrs. Curry "if you are going to do anything, you can call the undertaker". Then he pulled a gun from his shirt and started swinging it around and Miss West asked him to put the gun up but he did not do so and Mrs. Curry left the room and when she was in the hall she heard several shots fired and heard Miss West screaming. She went on outside and across the street to the hospital and reported what had happened and asked them to get help. As soon as help arrived both Goode and Miss West were found upon the floor fatally wounded. They were both removed to the hospital across the street and Goode died at 10:20 P.M. and Miss West died at 10:25 P.M. the same night. The whole record reflects that Miss West was murdered by a jilted lover and that the only connection between her employment and the cause of her death was that she was on duty at the time she was shot and was merely informing Goode of the rules of the Telephone Company which prohibited visitors in the operating room at the exchange. The attorney-referee rendered his written opinion and findings on May 25, 1955, and held that the evidence is insufficient to prove that there was a causal connection between the employment of Miss West and her death or that her death arose out of her employment. On October 20, 1955, the full commission affirmed the order of the attorney-

referee and the order of the commission was affirmed by the circuit court on January 3, 1956.

On June 6, 1955, the claimant filed a petition for review by the full commission and on June 16, 1955, the claimants filed a petition to reopen the case for the taking of further proof on the ground of newly discovered evidence; which evidence in general terms was alleged to be that at and for sometime prior to the killing Wilbourn Goode was of unsound mind and in fact insane. The motion to reopen the case was overruled on August 23, 1955.

■■■ ■ Appellants contend first that there was error in the overruling of their motion to reopen the case and they base their contention upon the provisions of Section 6998-27 of the Mississippi Code of 1942. A reading of that section of the compensation act clearly shows that it was purely discretionary with the Commission as to whether or not it will reopen a case. The statute says "upon its own initiative, or upon the application of any party in interest on the ground of a change in conditions or because of a mistake in a determination of fact, the commission *may*" review the case and issue a new compensation order, etc. It is true that sometimes the word "may" has been construed to mean "shall", but we do not think that in this case it was mandatory on the Commission to reopen the matter and have another hearing. It had a sound discretion to exercise with reference to reopening the case, and so long as its discretion was not abused, its action in refusing to reopen the matter does not constitute reversible error. Furthermore as we shall show under the next point, even if Goode was insane, we do not think that this would change the result under the particular facts of this case.

■■■■ The second and last point argued by appellants is that Miss West's death arose out of and in the course and scope of her employment. The Compensation Act of Mississippi, Section 6998-02, in paragraph 2 provides:

" 'Injury' means accidental injury or accidental death arising out of and in the course of employment, and includes injuries to artificial members; and also includes an injury caused by wilful act of a third person directed against an employee *because of his employment,* while so employed and working on the job."

In the case of Brookhaven Steam Laundry v. Watts, 214 Miss. 569, 59 So. 2d 294, we had occasion to consider at length what is meant by the section of our Compensation Act which provides that it includes an injury caused by the wilful act of a third person directed against an employee because of his employment. In that case, beginning in 214 Miss. at page 633, we said:

" 'While the interpretation of the phrase "arising out of the employment", as used in workmen's compensation acts to define the injuries compensable thereunder, has given rise to many questions of considerable difficulty to which the decisions are not harmonious, there is general agreement upon the proposition that an injury arises out of an employment when but only when there is a causal connection between such injury and the conditions under which the work is required to be performed, it is not sufficient that the employee is at the place of his employment at the time of the accident and doing his usual work.' 58 Am. Jur., Workmen's Compensation, p. 718, Par. 211.

"In discussing the meaning of the words 'Arising out of and in the course of employment' Schneider, often quoted by the courts in compensation cases, says: 'As has already been indicated, it has been held quite uniformly that an injury arises out of the employment when there is a causal connection between the conditions under which the work is required to be performed and the resulting injury. * * * The fact that one is working at the time he is injured, and would not have suffered injury had he not been employed, does not show a causal connection between the employment and the injury, nor

will a showing that the employment brought the party to the place where injured and that he would not have met with the accident elsewhere show a proximate causal relation between the employment and the injury.' 'The risk must be reasonably incidental to the employment * * *. There must be some connection between the injury and the employment other than the mere fact that the employment brought the injured party to the place of injury.' Schneider, Vol. 6, pages 7, 32 and 33.

"Under the Mississippi statute, if the injury or death has been caused by the willful act of a third person, it must be shown that such willful act was directed against the employee 'because of his employment, while so employed and working on the job.' * * * *

"In 58 Am. Jur., Workmen's Compensation, p. 765, Par. 265, it is said that the general rule is that an injury inflicted upon a workman by the willful or criminal assault of a third person may be regarded as an accidental injury within the meaning of that term as used in a Workmen's Compensation Act. 'It is also established that an injury is to be regarded as having arisen out of the employment when the nature of the employment is such as naturally to invite an assault, or when the employee is exposed to an assault by the character of his work, as when he is protecting or in charge of his employer's property, and the assault naturally results because of the employment, and not because of something unconnected with it, so that it is a hazard or special risk of the work,' But, 'when the assault is unconnected with the employment, or is for reasons personal to the assailant and the one assaulted, or is not because the relation of employer and employee exists, and the employment is not the cause, though it may be the occasion of the wrongful act, and may give a convenient opportunity for its execution, it is ordinarily held that the injury does not arise out of the employment.' "

In that case we further said, beginning on page 639:

" 'The employment brought the deceased face to face with his enemy, and there is no difficulty in saying that this murder arose "in the course of" employment; but it cannot be said, and the board had no evidence upon which to erect a finding, that the murder arose "out of" the employment. All the evidence in the case demonstrates that the deceased was murdered for a personal cause having no relation to employment.' * * *

"The burden of proof was on the appellees to show by competent evidence that there was a causal connection between the wilful act of Garrett in killing Watts and Watts' employment by the Brookhaven Steam Laundry. The circumstances of the killing, as testified to by the witnesses, did not indicate that Garrett shot Watts because of Watts' employment; and if Mrs. Garrett's testimony were rejected in its entirety there would be no proof in the record to sustain appellees' contention that the killing occurred because of Watts' employment. * * *

"We think that the proof in this case shows clearly that Watts' death was caused by the wilful act of a third person intended to injure him because of reasons personal to him, and not because of his employment by the Brookhaven Steam Laundry. There was no substantial proof in the record to support the findings of the Commission that Watts' death arose out of his employment or that Garrett killed Watts because of his employment."

We are of the opinion that there is no evidence whatsoever in this case to show that Miss West was killed because of her employment and that therefore she was not under the protection of the Mississippi statute, which in a case of this nature limits the matter of a recovery to that extent. The fact that, immediately after shooting Miss West, Goode turned the pistol upon himself and committed suicide negatives the idea that he killed Miss West because of her employment. The judgment of the

circuit court affirming the order of the Compensation Commission and of the attorney-referee is therefore affirmed.

Affirmed.

*McGehee, C. J.,* and *Kyle, Arrington* and *Gillespie, JJ.,* concur.