107 N.J. Super. 254 (1969)
258 A.2d 36
LOUISE A. REILLY, PETITIONER-APPELLANT,
v.
WEBER ENGINEERING CO., INC., RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Essex County Court, Law Division.
October 16, 1969.
*255 Mr. Frank J. Miele, appeared for petitioner (Messrs. Riker, Danzig, Scherer & Brown, attorneys).
Mr. Alfred A. Arnold, appeared for respondent (Messrs. Carroll & Galvin, attorneys).
MILMED, J.C.C.
Petitioner, Louise A. Reilly appeals from a judgment of the Division of Workmen's Compensation dismissing her dependency claim petition for compensation. The petitioner, widow of Raymond Robert Reilly, had filed the petition seeking statutory workmen's compensation dependency *256 benefits for herself and two of her children, Timothy and Christine Reilly, and statutory burial allowance, alleging that the death of her husband resulted from personal injuries sustained by accident arising out of and in the course of employment with the respondent Weber Engineering Co., Inc. (Weber).
The material facts in the case are not in dispute. Raymond Robert Reilly died on April 8, 1966 as a result of injuries which he received when he fell from a catenary structure some 35 feet above railroad tracks of the Erie Lackawanna Railroad Company adjoining an industrial complex in Bloomfield, in which Weber's plant is located. At the time decedent was attempting to rescue a young boy who was dangling by one foot which was caught in high tension wires on the catenary.
At the time of the attempted rescue, decedent was employed by Weber as a "truck driver and warehouse man," working three days a week. His wages from this employment were $90 a week. His employment with Weber began in 1959 and continued until the time of his death. He was also, at the time of his death, a fire captain in the Fire Department of the City of Newark.
The respondent's plant, located in the Parkway Industrial Park in Bloomfield, consisted of an office on the first floor of a building at 5 Lawrence Street and a shop in a building about 100 yards away in the parking area. The distance between the shop and the place where the accident occurred was about 80 to 85 yards. On the afternoon of April 8, 1966 decedent was engaged in his regular duties at the shop, working on maintenance of construction equipment with two co-workers, William and John DeMichele. Two other employees, Anna M. LaCapra and Philip Hagin, were at the respondent's office at the time; Miss LaCapra, a secretary, being in charge of the office in the absence of the president of the corporation. None of the three employees in the shop at the time had any supervisory authority over any other. When the president of the corporation was not in attendance, *257 "if something had to be done, those who remained discussed what had to be done and determined what they thought was the best way of accomplishing it."
In the early afternoon Miss LaCapra, on hearing a "constant roar of sirens" and observing police cars and a fire deputy car coming into the industrial complex, and being unable to work, called the shop on the "Inter-com." She spoke to William DeMichele and asked him to check and let her know what was going on outside. He told her, "We'll find out," and then said to his brother John and decedent, "Let's see what it is." The three of them then walked out to a loading platform in back of the shop and saw people running behind a boiler house, "the last building at the back of the plants." Decedent left the loading platform to see what was happening, crossed over "spur tracks" at the platform, and went through a gate about 30 feet from the back of the Weber shop and onto a road leading to the back of the industrial complex. Accompanied by Philip Hagin, who had left the Weber office to investigate the commotion, decedent rounded the boiler house. A young boy was dangling by one foot which was caught in high tension wires on a catenary structure above the railroad tracks adjacent to the complex.
Decedent and Philip Hagin were standing near a police radio car at the scene when a report over the radio announced that the electric power had been shut off. William Suprenant, from a nearby luncheonette, then climbed up to the catenary. The electric current had not been cut off. In his attempt to rescue the boy, William Suprenant received an electrical shock and fell across some wires with his leg swinging back and forth hitting the catenary structure. Decedent, having climbed to the top of the catenary structure, and using a stick which one of the police officers had handed to him, tried to keep William Suprenant's leg away from the catenary. He, too, received an electrical shock. He fell from the catenary onto the tracks some 35 feet below, and died from his injuries upon arrival at the hospital a short while later.
*258 He was survived by his wife, the petitioner-appellant, and their three children, Raymond, aged 25, Timothy, aged 24, and Christine, aged 14. It is not claimed that Raymond, who was then attending medical school and not living at home with his parents, was dependent upon decedent at the time of the accident. Timothy and Christine were both living at home with their parents at the time of decedent's death. It is claimed that Timothy was partially dependent upon decedent at the time of his death. Timothy suffered from cerebral palsy, and although employed and earning about $3,600 a year at the time, was supported in part by decedent to the extent of decedent's furnishing him with room and board, paying for his automobile expenses including insurance, and paying for his life insurance. There is no question as to petitioner's or Christine's total dependency upon decedent at the time of his death. See N.J.S.A. 34:15-13. The cost of burial exceeded the applicable statutory burial allowance. No claim is made for any medical, surgical or hospital expense.
The judge of compensation dismissed the dependency claim petition upon his determination that the accident did not arise out of and in the course of decedent's employment with respondent. He made no determination as to the dependency of Timothy.
My analysis and appraisal of the record in this case and my review of the applicable decisional law lead to a contrary conclusion. Here, a fire captain of the Newark fire department, employed three days a week by respondent, was, while working for respondent, alerted to a commotion near the place of his employment involving fire apparatus and police vehicles. He and another employee proceeded to investigate the commotion, and in doing so were confronted with an emergency  a young boy dangling from high tension wires on a catenary structure some 35 feet above railroad tracks. He died from injuries sustained in a fall from the catenary structure while attempting a rescue. I find and determine that his accidental death was work-connected.
*259 The Workmen's Compensation Act "nowhere either in terms or purpose, embodies the common law concept of proximate causation; on the contrary it is enough if the employment is a contributory cause." Secor v. Penn Service Garage, 19 N.J. 315, 319 (1955).
In Secor, Justice Jacobs, in his opinion for a majority of the State Supreme Court, pointed out that
The statutory phrase "by accident arising out of and in the course of his employment" has no strict common law counterpart and courts have defined and applied it with varying liberality. In the oft-cited case of Bryant v. Fissell, 84 N.J.L. 72, 77 (Sup. Ct. 1913), Justice Trenchard, in sustaining an award to an injured workman, stated that a compensable accident results "from a risk reasonably incidental to the employment" and that an accident arises in the course of the employment "if it occurs while the employe is doing what a man so employed may reasonably do within a time during which he is employed, and at a place where he may reasonably be during that time." See Miller v. Bill Miller's Riviera, Inc., 21 N.J. Super. 112, 116 (App. Div. 1952); Schultz v. Henry V. Vaughans Sons & Co., 24 N.J. Super. 492, 498 (Cty. Ct. 1953). In Belyus v. Wilkinson, Gaddis & Co., supra, Justice Heher noted that an accident arises out of the employment when the risk is "reasonably incident" thereto, and arises in the course of the employment when it occurs within the period of the employment at a place where the employee may reasonably be and while he is reasonably fulfilling the duties of the employment "or doing something incidental to it." * * * [at 320]
It is well settled that "an employee is not deprived of the benefits of the Compensation Act simply because he was not actually working when the accident occurred." Secor v. Penn Service Garage, supra, 19 N.J., at 321, and see Tocci v. Tessler & Weiss, Inc., 28 N.J. 582, 588 (1959). And, as pointed out by Justice Wachenfeld in his opinion for a majority of the State Supreme Court in Green v. DeFuria, 19 N.J. 290 (1955):
* * * it is clear that regardless of how rigid an employer's work order may be, there are always situations which will occasionally arise which justify a departure from instructions and which the employer would have countenanced had he been present. The judicial treatment of these situations has labeled them "emergencies," with the result that the scope of the employment is impliedly extended to include *260 the performance of any act designed to save life or further the employer's interests. [at 299-300]
In the present case decedent, far from disregarding any employer instructions, was investigating the cause of a commotion near the employer's premises, in response to Miss LaCapra's call, when he was confronted with the "emergency." His rescue attempt was accordingly clearly within the scope of his employment. See Green v. DeFuria, supra, 19 N.J., at 300, and 1 Larson, Workmen's Compensation Law, §§ 28.10, 28.11 (1966). See also, O'Leary v. Brown-Pacific-Maxon, Inc., 340 U.S. 504, 71 S.Ct. 470, 95 L.Ed. 483 (1951). Undoubtedly, but for the fact of decedent's employment with Weber, his injuries and ensuing death on April 8, 1966, would not have happened. See Howard v. Harwood's Restaurant Co., 25 N.J. 72, 85 (1957). See also Tocci v. Tessler & Weiss, Inc., supra, 28 N.J., at 589.
In O'Leary v. Brown-Pacific-Maxon, Inc., supra, the United States Supreme Court had under review an award of compensation under the federal compensation remedy, the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq. The deputy commissioner had awarded a death benefit on a claim filed by the decedent's dependent mother. The District Court denied the petition of Brown-Pacific and its insurance carrier to set aside the award. On appeal, the Court of Appeals for the Ninth Circuit reversed. The United States Supreme Court, on its review, reversed the judgment of the Court of Appeals and affirmed the judgment of the District Court. In the course of his opinion for the court Justice Frankfurter stated:
* * * The award was made on a claim arising from the accidental death of an employee of Brown-Pacific-Maxon, Inc., a government contractor operating on the island of Guam. Brown-Pacific maintained for its employees a recreation center near the shoreline, along which ran a channel so dangerous for swimmers that its use was forbidden and signs to that effect erected. John Valak, the employee, spent the afternoon at the center, and was waiting for his employer's *261 bus to take him from the area when he saw or heard two men, standing on the reefs beyond the channel, signaling for help. Followed by nearly twenty others, he plunged in to effect a rescue. In attempting to swim the channel to reach the two men he was drowned.

* * * * * * * *
The Longshoremen's and Harbor Workers' Act authorizes payment of compensation for "accidental injury or death arising out of and in the course of employment". § 2(2), 44 Stat. 1425, 33 U.S.C. § 902(2), 33 U.S.C.A. § 902(2). As we read its opinion the Court of Appeals entertained the view that this standard precluded an award for injuries incurred in an attempt to rescue persons not known to be in the employer's service, undertaken in forbidden waters outside the employer's premises. We think this is too restricted an interpretation of the Act. Workmen's compensation is not confined by common-law conceptions of scope of employment. Cardillo v. Liberty Mutual Ins. Co., 330 U.S. 469, 481, 67 S.Ct. 801, 808, 91 L.Ed. 1028; Matter of Waters v. William J. Taylor Co., 218 N.Y. 248, 251, 112 N.E. 727, 728, L.R.A. 1917A, 347. The test of recovery is not a causal relation between the nature of employment of the injured person and the accident. Thom v. Sinclair, [1917] A.C. 127, 142. Nor is it necessary that the employee be engaged at the time of the injury in activity of benefit to his employer. All that is required is that the "obligations or conditions" of employment create the "zone of special danger" out of which the injury arose. Ibid. A reasonable rescue attempt, like pursuit in aid of an officer making an arrest, may be "one of the risks of the employment, an incident of the service, foreseeable, if not foreseen, and so covered by the statute." Matter of Babington v. Yellow Taxi Corp., 250 N.Y. 14, 17, 164 N.E. 726, 727 [61 A.L.R. 1354]; Puttkammer v. Industrial Comm., 371 Ill. 497, 21 N.E.2d 575. This is not to say that there are not cases "where an employee even with the laudable purpose of helping another, might go so far from his employment and become so thoroughly disconnected from the service of his employer that it would be entirely unreasonable to say that injuries suffered by him arose out of and in the course of his employment." Matter of Waters v. William J. Taylor Co., 218 N.Y. at page 252, 112 N.E. at page 728. We hold only that rescue attempts such as that before us are not necessarily excluded from the coverage of the Act as the kind of conduct that employees engage in as frolics of their own. [71 S.Ct., at 471-472]
As pointed out in 1 Larson, Workmen's Compensation Law, § 28.23 (1966) at page 452.85: "The Brown-Pacific-Maxon case adopts the positional risk theory in its purest form, by finding work-connection if the employment merely brings the employee to the place where he encounters a moral obligation to rescue a stranger. * * *"
*262 See also, Green v. DeFuria, supra, 19 N.J., at 296-297, wherein it is pointed out that "It matters not whether the act performed and the risk assumed by the employee is directly connected with the employment or extraordinary in character, so long as the employment is a necessary factor leading to the accident * * *."
I find and determine that decedent's death resulted from injuries sustained by accident arising out of and in the course of his employment with the respondent.
Accordingly, I find and determine that petitioner and decedent's dependent children are entitled to statutory workmen's compensation death benefits. N.J.S.A. 34:15-13. In addition to the statutory dependency benefits, petitioner is, of course, also entitled to the applicable statutory burial allowance. N.J.S.A. 34:15-13. As pointed out earlier in this opinion, there is no question in this case as to the total dependency upon decedent of his widow and his infant daughter Christine. See N.J.S.A. 34:15-13. Petitioner's employment as a full-time teacher earning $2,000. a year at the time of decedent's death does not affect her status of total dependency upon him. Id. See also Fitzsimmons v. Federal Shipbuilding & Dry Dock Co., 4 N.J. 110, 114 (1950). In dispute is the claim that Timothy Reilly, one of decedent's adult sons, was partially dependent upon him at the time of his death. Chief Justice Weintraub in his opinion for a majority of the State Supreme Court in Ricciardi v. Damar Products Co., 45 N.J. 54 (1965) points out that
The general test of dependency is well put in 2 Larson, Workmen's Compensation Law § 63.11, p. 102 (1961):
"A showing of actual dependency does not require proof that, without decedent's contributions, claimant would have lacked the necessaries of life. The test is whether his contributions were relied on by claimant to maintain claimant's accustomed mode of living." [at 62]
Applying this standard, I find and determine that Timothy Reilly, although 24 years old and working at the time, was partially dependent upon the decedent by reason of *263 his disability and is, accordingly, entitled to partial dependency benefits. Additional testimony is required for a determination as to the amount of the payments he is entitled to for the full compensation period. See N.J.S.A. 34:15-13; and Ricciardi v. Damar Products Co., supra, 45 N.J., at 64-67.
The judgment of the Division of Workmen's Compensation is reversed and the cause remanded to the Division for additional testimony and for findings and determinations in accordance with this opinion and the applicable statute, N.J.S.A. 34:15-13. Jurisdiction of the cause is retained by this court. See Quiles v. New Jersey Metals Co., 37 N.J. 91, 95-96 (1962).