379 So.2d 888 (1980)
BIG "2" ENGINE REBUILDERS and Casualty Reciprocal Exchange
v.
Raymond W. FREEMAN.
No. 51463.
Supreme Court of Mississippi.
January 30, 1980.
*889 Bryant & Stennis, Rae Bryant, Gulfport, for appellants.
O'Barr, Hurlbert & O'Barr, Bobby G. O'Barr, Biloxi, for appellee.
Before PATTERSON, C.J., and SUGG and COFER, JJ.
PATTERSON, Chief Justice, for the Court:
An administrative law judge, followed by the three-member Workmen's Compensation Commission and the Circuit Court of the First Judicial District of Harrison County, decided this workmen's compensation case in favor of the claimant, Raymond W. Freeman. The employer, Big "2" Engine Rebuilders, and its insurer, Casualty Reciprocal Exchange, appeal, contending that Freeman's injury did not "aris[e] out of and in the course of [his] employment" within the meaning of Mississippi Code Annotated section 71-3-3(b) (1972). We affirm.
On Wednesday, September 3, 1975, the claimant, a route salesman, drove a one-seated unmarked van pursuant to his duties of calling on garages in Hancock County, delivering products and taking orders for parts or engine repairs. At about noon, he proceeded westerly on a service road paralleling Highway 90 enroute to Spiers' Garage when he came upon a man who flagged him to stop beside an automobile with a raised hood. Responding to the distress signal of the apparently disabled motorist, the claimant pulled over and exited his van. The man pointed a gun behind his ear and told him not to turn around. The claimant, apparently from a blow, lost consciousness and recall at this moment, although the evidence shows he managed to recover sufficiently from the trauma of head injuries to reach Spiers' Garage, where he lapsed once more into unconsciousness in the presence of his employer's customer. The forums below found that the roadside encounter rendered him permanently and totally disabled.
The singular purpose pervading the Workmen's Compensation Act is to promote the welfare of laborers within the state. Miss. Code Ann. § 71-3-1 (1972); Nowlin v. Lee, 203 So.2d 493 (Miss. 1967). As remedial legislation to compensate and make whole, McCluskey v. Thompson, 363 So.2d 256 (Miss. 1978), it should be construed fairly to further its humanitarian aims. Speed Mechanical, Inc. v. Taylor, 342 So.2d 317 (Miss. 1977); L.B. Priester & Son, Inc. v. Dependents of Bynum, 244 Miss. 185, 197-98, 142 So.2d 30 (1962). Doubtful cases must be compensated. Evans v. Continental Grain Co., 372 So.2d 265 (Miss. 1979); King v. Westinghouse Electric Corp., 229 Miss. 830, *890 92 So.2d 209 (1957); Lindsey v. Ingalls Shipbuilding Corp., 219 Miss. 437, 68 So.2d 872 (1954); National Surety Corp. v. Kemp, 217 Miss. 537, 64 So.2d 723 (1953); Deemer Lbr. Co. v. Hamilton, 211 Miss. 673, 52 So.2d 634 (1951); see also Dunn, Mississippi Workmen's Compensation §§ 31-32 (2d Ed. 1967).
The order of the administrative judge, the decision of two commissioners in affirmance, one commissioner dissenting, the comments of the circuit judge in affirming, and the disparate conclusions of the justices on this Court, indicate strongly the case is doubtful. This, coupled with the lack of controlling authority in this jurisdiction and the persuasiveness of the weight of authority from other jurisdictions, supports affirmance, in the opinion of a majority of the members of this Court. We decline, as urged by the appellant, to hold that a roadside stop of a traveling salesman upon being flagged down constitutes a "deviation" entailing forfeiture of compensation benefits.
The statutory language "arising out of" and "in the course of" creates a requisite for compensability. Broadly, "arising out of" calls for some causal connection between the employment and the injury. However, the employment need not be the sole cause of injury; it is sufficient if it rationally contributes to it. Prince v. Nicholson, 229 Miss. 718, 91 So.2d 734 (1957). Reasonable relation of employment and injury may involve minimal causation, less than needed for liability in the field of Torts. See, e.g., Charles N. Clark Assoc. v. Dep. of Robinson, 357 So.2d 924 (Miss. 1978).
The decisions also display the breadth of the phrase "in the course of." This phrase is satisfied whenever the injury resulted from activity which is (1) in its overall contours actuated at least in part by a duty to serve the employer, or (2) reasonably incidental to the employment. Incidental activities have been held to include such personal pursuits as cleaning teeth, smoking and procuring tobacco, and going to the telephone. Dunn, supra, at § 178 (2d Ed. 1967). In Collums v. Caledonia Mfg. Co., 237 Miss. 607, 115 So.2d 672 (1959), we permitted compensation for emotional upset resulting from an employee's purchase of a bottle of soft drink containing a mouse. The purchase of soft drinks was without doubt "purely personal," but being rationally connected with the employment, customary and expectable, compensation was allowed.
With respect to traveling salesmen in particular, "`[t]he test in brief is this: If the work ... creates the necessity for travel, [the employee] is in the course of his employment, though he is serving at the same time some purpose of his own.'" Durr's Dependents v. Schlumberger Oil Well Surveying Co., 227 Miss. 606, 614, 86 So.2d 507, 509 (1956). We recently held the activity of a traveling salesman is not to be lifted from the perimeters of his employer's mission and viewed "in isolation" but must be viewed in its context, "as a whole." E & M Motel Management, Inc. v. Knight, 231 So.2d 179, 182 (Miss. 1979) (injury on stop to see grandchild held compensable, citing the "dual purpose" doctrine). When we view the present claimant's conduct "as a whole," we think it sufficiently within the contours of his employment to affirm the award notwithstanding the involvement of a third party intentional tort.
Mississippi Code Annotated section 71-3-3(b) (1972), provides in part:
"Injury" means accidental injury . . arising out of and in the course of employment ... and also includes an injury caused by the wilful act of a third person directed against an employee because of his employment while so employed and working on the job... . [emphasis added].
The statute employs inclusive, not exclusive, language and mandates recovery for injury caused by a third party whenever it can fairly be said that the employee was injured "because of" his employment. The words "because of," like the other broadly-construed words of causation with the act, such as "arising out of," express the necessity of a nexus between the injury and *891 employment. The base line is simply a rational connection of employment and injury. In Barry v. Sanders, 211 Miss. 656, 52 So.2d 493 (1951), although denying compensation, we held the issue of whether a claimant was assaulted "because of his employment, while so employed and working on the job," was factual and to be determined by the commission.
We have few compensation cases involving third party intentional torts. A review of those which deny compensation reveals none which compel reversal in the face of Barry, supra.
We have held no rational connection exists where the intentional tort is the result of a personal vendetta as easily committed at the place of employment as elsewhere. In Brookhaven Steam Laundry v. Watts, 214 Miss. 569, 626, 59 So.2d 294 (1952), we denied compensation where an irate husband killed an employee laundry man, suspecting him to be his wife's paramour. Similarly, in Ellis v. Rose Oil Co., 190 So.2d 450 (Miss. 1966), we denied compensation where the employee's death resulted from his affair with a married woman. In another case denying compensation, a jilted suitor murdered the employee. West's Est. v. Southern Bell Tel. & Tel. Co., 228 Miss. 890, 90 So.2d 1 (1956). See also Dewberry v. Carter, 218 So.2d 27 (Miss. 1969) (record reveals the deceased scuffled and met his death as a result of outrage flowing from a "conversation" with his assailant "about this woman"; compensation denied). We agree with these cases in their holdings that no public policy would be served by compensating an injury or death originating with the employee's personal indiscretions, whether real or fancied. Risks associated with such escapades cannot reasonably be viewed as risks associated with employment. This case, in contrast, involves no such "frolic."
Barry, supra, we find distinguishable also. We there denied compensation on a record devoid of proof as to why the claimant, a traveling salesman, was assaulted between his car and his lodging upon returning from his evening meal. In sum, this Court has never denied compensation to an employee injured as a result of a good faith attempt to render aid to a stranger actively soliciting such aid at a place the employment required the employee to be.
We are of the opinion the following facts make this case one of first impression, to be decided as such: (1) no personal vendetta arising from the claimant's activities motivated his injury; (2) the claimant violated no instructions concerning the manner in which the work was to be carried out; and (3) the stop by the roadside upon being flagged down involved no significant deviation either specially or temporally from the delivery route. We think an employer may reasonably foresee that his traveling employee will stop to aid a distressed motorist when implored to do so. Such conduct is an acknowledged incident of being on the road. These distinctive aspects here deprive the following cases of controlling effect: Breland & Whitten v. Breland, 243 Miss. 620, 139 So.2d 365 (1962); Earnest v. Interstate Life & Accident Ins. Co., 238 Miss. 648, 119 So.2d 782 (1960); Collier v. Texas Construction Co., 228 Miss. 824, 89 So.2d 855 (1956); Persons v. Stokes, 222 Miss. 479, 76 So.2d 517 (1954); Kughn v. Rex Drilling Co., 217 Miss. 434, 64 So.2d 582 (1953).
Injuries resulting from similar well-intentioned humanitarian acts have been found compensable in other states. See, e.g., Baumann v. Howard J. Ehmke Co., 126 Pa.Super. 108, 190 A. 343 (1937). We note also that universally recognized, small, non-deviant charitable activities promote the employer's interest and public relations. Larson, Workmen's Compensation Law, § 27.22(b) (Cum.Supp. 1979). Particularly is this true where, as here, the employer's business includes the sale of rebuilt engines and parts, and the stop resulted from the signal of a distressed motorist.
In O'Leary v. Brown-Pacific-Maxon, Inc., 340 U.S. 504, 71 S.Ct. 470, 95 L.Ed. 483 (1951), the claimant's decedent, an employee of a government contractor, while waiting for his employer's bus, saw two strangers off the coastline signaling for help. Disregarding signs forbidding swimming in the *892 hazardous waters, he plunged into the channel and drowned in his rescue effort. The Court allowed compensation, stating, "[a]ll that is required is that the `obligations or conditions' of employment create the `zone of special danger' out of which the injury arose... . A reasonable rescue attempt ... may be `one of the risks of the employment, an incident of the service, foreseeable, if not foreseen, and so covered by the statute.'" 340 U.S. at 507, 71 S.Ct. at 472.
We follow O'Leary in favoring compensation for injury or death incurred in the aid of strangers rendered at a time and place within the contours of the employment, and agree with Larson that compensability follows when "ordinary standards of humanity" call for rescue. Larson, Workmen's Compensation Law, § 28.00 (Cum. Supp. 1979); see also Quinney v. Maryland Cas. Co., 347 So.2d 921 (La. App. 1977); Carey v. Stadther, 300 Minn. 88, 219 N.W.2d 76 (1974); Reilly v. Weber Engineering, 107 N.J. Super. 254, 258 A.2d 36 (Cty.Ct. 1969); Texas Employer's Ins. Association v. Thomas, 415 S.W.2d 18 (Tex.Civ.App. 1967); Graves v. Central Electric Power Cooperative, 306 S.W.2d 500 (Mo. 1957); Noble v. Zimmerman, 237 Ind. 556, 146 N.E.2d 828, 832-33 (1957); Scott v. Rhyan, 78 Ariz. 80, 275 P.2d 891, 894 (1954); Edwards v. Louisiana Forestry Comm., 221 La. 818, 60 So.2d 449 (1952); Denton v. Young, 203 Okl. 688, 226 P.2d 406 (1950); Glen Falls Indemnity v. Sockwell, 58 Ga. App. 111, 197 S.E. 647 (1938).
We nevertheless emphasize, as does Larson, that not "every rescue of a stranger by an employee is covered; [the rule here endorsed] refers [only] to a rescue the necessity for [the] making [of] which is thrown in the claimant's path by the conditions of the employment. When [, for example,] claimant is ... a ... driver who is certain to encounter collisions along the highway, it is easy to see the connection between the work and the contact with the emergency." Larson, supra, at § 28.22. See Puttkammer v. Industrial Comm'n., 371 Ill. 497, 21 N.E.2d 575 (1939) (truckdriver's injury received while carrying injured child across a road from scene of accident at which he stopped to render aid held compensable, the Court reasoning that it would be wholly illogical to compensate injuries received on stop for a drink of water, but not injuries received on stop made out of laudable humanitarian impulses).
We think the present claimant's injury resulted from a humanitarian act which was literally thrown into his path because of his employment. Compare In Re D'Angeli's Case, 369 Mass. 812, 343 N.E.2d 368 (1976), in which an employee returning from his employer's mission stopped to remove a coil of wire from a lane of travel rather than taking an unobstructed course around it. He did so not "for" himself or employer, but rather for the safety of subsequent motorists on the road. In the process a car struck him, and the Court held the injury compensable. See also Toro v. 1700 First Avenue Corp., 12 N.Y.2d 1001, 239 N.Y.S.2d 130, 189 N.E.2d 625 (1963) (compensation awarded where repairman was fatally injured by unknown assailant for unknown reasons in house in which he was to repair boiler).
In conclusion, no Mississippi case compels a decision against compensation on this appeal. It is at least a "doubtful case," and as such we affirm it in favor of compensation. In our opinion, injuries caused by third party intentional torts should be compensated whenever it can be fairly said that they occurred "because of" the employment. Such was the present case.
AFFIRMED.
ROBERTSON, P.J., and WALKER, LEE and BOWLING, JJ., concur.
SMITH, P.J., and COFER, SUGG and BROOM, JJ., dissent.
COFER, Justice, dissenting:
Being of the strong conviction that the injury here involved was not in the course of Freeman's employment and did not arise out of the employment, I, with deference, dissent.
*893 A review of the proof and an examination of authorities hereinafter contained will, in my opinion, demonstrate error in the decision which warrants reversal and judgment here for appellants.
Appellee Raymond W. Freeman filed a motion to controvert with the Workmen's Compensation Commission on February 26, 1976. As ground therefor he showed location of accident as "Spiers Body Shop, Bay St. Louis, Mississippi," and description of accident or cause of injury as "fractured skill with subdural hematoma." He filed motion to amend to show "that the alleged accident occurred on the service road next to U.S. Highway 90 west of Waveland, Mississippi, west of Our Shopping Center." This motion to amend was sustained on April 28, 1976. Appellants, Big "2" Engine Rebuilders, the employer, and Casualty Reciprocal Exchange, Big "2's" carrier, answered with an affirmative defense, "The condition complained of by the claimant in his case did not arise out of or in the course of his employment and his condition is in no way related to his employment."
On June 17, 1977, the administrative judge, after hearings, held the occurrence to be compensable under the Workmen's Compensation Act, and appellants here appealed therefrom to the full Commission where, by the majority, the administrative judge was affirmed. Appellants took the case to the Circuit Court of the First Judicial District of Harrison County where the award was affirmed and the employer and the carrier have appealed here.
The assignment of error is that "The Circuit Court erred in finding that the order of the commission did not contain error of fact or law."
Pertinent facts, and agreeing with those found by the administrative judge, are as follows:
Claimant was employed by Big "2" as a commission salesman on a route. He was furnished a truck, and on the day of the occurrence presently to be detailed, he was driving a van, with only one seat. For his driving he was paid vehicle expenses. His employment was to call on garages in the three coastal counties and Stone County, delivering products his customers had ordered and taking orders from them for parts or engine repairs. As he did so, he would occasionally collect on C.O.D. items, but infrequently received money for his employer. On the day of the occurrence in issue, his employer's van which he was operating had no indication on it linking the employer with it, and he had no items of property to be delivered to customers, and had none of his employer's money with him.
He was required to keep a daily record of his actions as employee and to turn this log into his employer.
On Wednesday, September 3, 1975, his duties and schedule were to have him in Hancock County. His daily record for that day reflected that he worked westward, and at roughly the noon hour, he had only one more call westerly to make, and that was past Bay Saint Louis, at Spiers' Garage. He had lunch at a shopping center in Bay St. Louis, after which he proceeded westerly on a service road paralleling Highway 90. On the way to Spiers' Garage he came upon a man with the hood raised on his car, and the man flagged him to stop.
Apparently assuming the man to be distressed because of car trouble, the claimant pulled to a stop and got out of the van. As he did so, the man pointed a gun behind claimant's ear and told him not to turn around. That was the last thing he remembered until he regained consciousness in a Gulfport Hospital, and although he went to Spiers' Garage where he fell out, and was carried from Spiers' Garage to a Hancock County hospital, from whence he was removed to the Gulfport Hospital, he had no memory of these events. At the Gulfport Hospital he underwent surgery for a brain injury incurred in the incident and received treatment for other injuries to his face, forehead and the right side of his head.
His daily log was filled out to show the hour and minute of his arrival at Spiers' Garage and the hour and minute of his departure therefrom, and the record contains testimony of Mrs. Spiers as to a conversation *894 between her and him at that garage and likewise testimony of Dewey Holden, an employee at the garage, of a conversation with claimant and of claimant's falling to the floor thereat.
There is no conflict in the facts before the administrative judge and before the commission.
The administrative judge found that as a result of that accidental injury, claimant is permanently and totally disabled and has been since September 3, 1975. He also found that on the date of the injury, September 3, 1975, claimant, "suffered an accidental injury which arose out of and in the course and scope of his employment of which the employer and carrier had notice and for which medical service and supplies were required."
Under their general statement of the error, on the part of the lower court, appellants argue two propositions:
1. Claimant, in stopping under the circumstances, deviated from his duties and thereby rendered his action noncompensable, and
2. The burden of proof was on claimant to establish the occurrence as meeting the requirements of Mississippi Code Annotated, section 71-3-3(b) (1972), for compensation.
The commission is the trier of fact, of course. Its findings and order will not be disturbed on appeal, unless prejudicial error is found therein, but the court has the statutory duty to review all questions of law and fact in the record. Section 71-3-55 and the several decisions annotated thereunder.
As in other cases, the law governing workmen's compensation hearings is that where there is no dispute as to the facts, the matter for decision is one of law. Wilson v. International Paper Co., 235 Miss. 153, 157, 108 So.2d 554 (1959). It has been observed above that there is no conflict in the testimony as to compensability or none.
It is argued, and supported by the record, that claimant's employment was to call on places of business which might want automobile engine service or parts. No part of his business or duties was stopping to lend aid to one he unfortunately mistakenly supposed to be a stalled motorist.
While we do not have any decisions bearing directly upon the effect of his stopping to be of assistance to a stranded motorist, we have, again with deference to the majority, sufficient law to compel a decision that the deviation is noncompensable.
Mr. Dunn, in his monumental work, Mississippi Workmen's Compensation, section 171 (2d Ed. 1967), sets out the rule thus:
If an employee steps aside from his employer's business for some purpose of his own, which is disconnected from his employment, the relationship of employment is temporarily suspended and he ceases to be in the course of employment. And this is no matter how short the time. When an injury is sustained during such suspension, it is not compensable.
* * * * * *
Instead of deviating on a mission of personal pleasure or necessity, the employee may step aside from his general employer's work to perform work for a third party, and, in such cases, the same rule applies. If this is done without the knowledge and consent of the general employer and not as a part of his general employment, the general employer is not responsible for an accident in the course of such activity.
Kughn v. Rex Drilling Co., 217 Miss. 434, 64 So.2d 582 (1953), is cited in the footnote to the paragraph of Dunn next above. Kughn was production superintendent of appellee, and, as such, he was required to check the production of each oil well and make a daily report to his employer. In the discharge of his duties, he was furnished an automobile. He was an experienced cable splicer, and did cable splicing on the side. On a day after completing his daily rounds of inspection for Rex Drilling Company, he went to a drilling site of Zach Brooks Drilling Company and began a cable splicing job, during which he had a cerebral hemorrhage, from which, after completing the job *895 and on the way to a doctor's office, he died. The widow's claim against both drilling companies was denied, the attorney-referee giving as reason therefor, "that he had temporarily left his regular employment and the area where he was required to work and was splicing a cable in Franklin County for the Zach Brooks Drilling Company without the knowledge or consent of the Rex Drilling Company." The decision was affirmed by the commission, the circuit court, and the Supreme Court.
In Breland & Whitten v. Breland, 243 Miss. 620, 139 So.2d 365 (1962), this Court said that if the activity is purely personal and is disconnected from employment, the duration of that activity suspends the employment relationship, citing Dunn's work, section 98.
In Bryan Bros. Packing Co. v. Dependents of Murrah, 234 Miss. 494, 106 So.2d 675 (1958), the Supreme Court said:
We have held that a traveling employee as being in the course of his employment from the time he leaves home on a business trip until he returns and the employment covers both time and place of travel except in deviation cases or where he was on a personal mission or errand of his own. M.E. Badon Refrigeration Co. v. Badon [231 Miss. 113], 95 So.2d 114, Dunn, Mississippi Workmen's Compensation Law, Sec. 103. (234 Miss. at 500, 106 So.2d at 677).
M. & W. Construction Co. v. Bugg, 241 Miss. 133, 141, 129 So.2d 631, 633 (1961), held that, "[a]n injury arises out of the employment when there is a casual (sic) connection between it and the job." (Citing Earnest v. Interstate Life & Accident Ins. Co., 238 Miss. 648, 119 So.2d 782 (1960)). Bugg was an around-the-clock employee of appellant, and was killed in a late afternoon by the falling of his panel truck upon him. There was some testimony that Bugg had been using the vehicle in furtherance of his master's business and that he was preparing it for further use for his master. This Court further said,
The testimony for claimants had therefore made out a prima facie case, since it was admitted that deceased Mr. Bugg was a resident employee on 24-hour duty,  not only as to "arising out of" but also "in the course of employment." It then became the burden of the employer to establish his defense that employee Bugg had "stepped aside" from his duty to his employer and temporarily abandoned the course of his employment. Bourgeois v. Miss. School Supply Co., 170 Miss. 310, 155 So. 209, and cases there cited.
(241 Miss. at 144, 145, 129 So.2d at 635).
In Earnest v. Interstate Life & Accident Ins. Co., 238 Miss. 648, 119 So.2d 782 (1960), (cited in the Bugg case above), appellant was employed as an insurance salesman for appellee. He had written insurance on the lives of four children of O'Neal Brandon. O'Neal lived with his father Grover Brandon. Appellant had been undertaking to get a waiver for the issuance of a policy to Grover, and, being successful, he went to Grover's rural home to take him for a medical examination looking to the issuance of insurance on him. Grover wanted to shave, and, while waiting for him, appellant saw Grover's son Neal some distance away from the house, and started to approach him to talk about insurance on him, O'Neal, who could not qualify for insurance on account of an ulcer. Further facts are related in the opinion.
Claimant testified he was going to talk to O'Neal about a policy while waiting for Grover. He walked a short distance toward him, and then returned to his car and picked up his shotgun. Claimant was interested in guns and carried one with him wherever he went, for the purpose of shooting any available birds. He lifted from his car his 12-gauge shotgun for the purpose of shooting some crows, which he had seen earlier flying in the vicinity. He liked to shoot a gun, and stated that if he saw a crow he intended to shoot him. He put a shell in the gun and walked about four steps toward where O'Neal was working when the gun accidentally discharged, hit him in the left ankle, as a result of which the lower part of that leg had to be amputated. (238 Miss. at 651, 119 So.2d at 783).
*896 Claimant claimed that he was approaching O'Neal to tell him, if his father was approved, he would try to get an approval for him also. "However, he frankly said that he obtained the gun to shoot a crow."
Grover testified that "Earnest [had] told him he had picked up his gun and was loading it to go down in the woods and shoot some crows. He did not remember him saying anything about going to see O'Neal."
Appellee's staff manager said Earnest "stated to him that while he was waiting for Grover Brandon, he (claimant) decided to get his gun and shoot a crow. He knew claimant carried the gun in his car and liked to shoot, but gave him no instructions about it one way or the other."
Coverage was denied, the Commission finding that claimant had "deviated from his employment and obtained a dangerous instrumentality not connected with his work, for his own personal pleasure", these being acts not incident to his employment.
Appellant claimed that he was on the Brandon property for the only purpose to sell insurance, and "when injured, he was at a place where he was supposed to be, fulfilling his duties." He asserted a dual purpose, in that the weapon was for his personal pleasure, but he was also performing his job in trying to sell insurance to both Brandons.
This Court said:

An injury arises out of the employment when there is a causal connection between it and the job. (Citing authorities). Claimant was not required to carry the gun. Its possession by him when it discharged was not connected with his employment. The injury did not arise out of the employment.

Earnest admitted he carried the gun for his own personal pleasure, and it had no connection with his job. The risk was unrelated to the employment, as distinguished from the mere increasing of hazards from employment by the employee using some article which proves to be dangerous, such as matches, defective clothing, etc. (citing authorities). In short, appellant's injury did not arise out of his employment. (Emphasis added) (238 Miss. at 652, 653, 119 So.2d at 783, 784).
This Court said further:

Secondly, the claimant's injury did not occur in the course of his employment, but at a time he had turned aside on a personal mission of his own. When claimant retraced his steps to his car for the purpose of getting his gun to shoot a crow, he turned aside on a personal mission, and was acting on that personal mission at the time he was injured. (citations). During this deviation from his employment, he was not in the course of his work activities. (authorities). (Emphasis added). (238 Miss. at 654, 119 So.2d at 784).
In Collier v. Texas Construction Co., 228 Miss. 824, 89 So.2d 855 (1956), T.C. Collier and two other boys were employed by appellee to carry drinking water from one bank of the Pascagoula River to the other and while returning in a boat, with the operator of the boat and their foreman, the boat was carrying a pump to the far shore. As they were thus returning, the boys decided among themselves that they would dive into the water and swim to the bank in order to cool off. One of the boys, not T.C., asked the foreman's permission to dive out of the boat and swim ashore, and the foreman told him "if they did so they `would be on their own', that is to say that it would be on their own responsibility." No one before then sought such permission or engaged in such activity.
There is nothing in the proof to indicate that these employees desired to cool off in the river so as to avoid being too hot to unload the pump from the boat when it reached the western shore of the stream. Nor is it shown whether or not the pump was of such size or weight as to require any exertion on the part of these employees to unload it.
In other words, it is clear that the boys merely decided to go in swimming while the motorboat operator and the foreman *897 were crossing the stream with the boat, and that they were doing this for their own satisfaction in a course of action wholly unrelated to the performance of their duties within the area of their employment on the boat or the performance of their work on the bank of the stream. This recreation was not one which had been sanctioned or acquiesced in by the employer on any former occasion, even though not expressly forbidden. (228 Miss. at 828, 89 So.2d at 857).
Citing and quoting from Persons v. Stokes, 222 Miss. 479, 76 So.2d 517 (1954), presently to be noticed in this opinion, the Supreme Court said that, "Collier's act of jumping into the treacherous current of the river involved a risk not incident to his employment." (228 Miss. at 830, 89 So.2d at 858).
In the suggestion of error (228 Miss. 830, 90 So.2d 390), Collier's claimants argued that the boys just took a different method of crossing the river; that Collier had not abandoned their objective, and "therefore this was only a temporary, insignificant deviation in the method of performing his employment, [and that he] was still performing an act related to the ultimate objective of his job, to reach the west bank of the river and continue work there." (228 Miss. at 830, 90 So.2d at 390).
The Court said, in response thereto:
Here all the evidence shows that Collier got into the river with the other boys in order to cool off, and that they were doing this for their own satisfaction and for a reason wholly unrelated to the performance of their jobs. Chatham and Mann [the other two boys] testified that they all wanted to go swimming in order to cool off since the day was hot. There is no evidence that Collier and the other boys were adopting a different method of reaching the river's bank which was the objective of performing their job. This was a turning aside from the employer's business to engage in an activity wholly unrelated to the employment, and not in any manner incidental to it. (Emphasis added). (228 Miss. at 831, 832, 90 So.2d at 391).
Persons v. Stokes, supra, held that Stokes, whose job was to help round up his employer's cattle, lost an eye from a ricocheted bullet or piece of tree bark when he and others left the cattle job temporarily to help kill a squirrel nearby, was not entitled to compensation, it being found that squirrel hunting was not part of his duties and the injury did not occur in the course of his employment. Stovall v. Jepsen, 195 Miss. 115, 13 So.2d 229 (1943), was cited and partially quoted therein as the Court said:

If a servant steps aside from the master's business for some purpose of his own disconnected with his employment, the relation of master and servant is temporarily suspended and "this is so no matter how short the time, and the master is not liable for his acts during such time." (Emphasis added). (222 Miss. at 486, 76 So.2d at 519).
Witness Bloss, claimant's superior, was asked as to the employer's rule, if any, about picking up hitchhikers, whereto he replied, "no, sir, we don't pick up hitchhikers. The truck had one seat in it. It's only for the driver."
Dunn is quoted above that the deviation, regardless of how short in time, suspends the relation of employment and for that suspended period, he ceases to be in the course of employment.
Increased use of the roads by route salesmen is urged, with the attendant increase to exposure to the hazards of the road. Attention to needs of other users of the roads was not required by claimant's employer, and it does not make a difference that there was no physical departure from claimant's route other than probably maneuvering the van to the side of the frontage road. The employment put him along the road, true enough, but it did not cause or exact of him an employment duty to come to the aid of a real or apparent distressed motorist. In such an instance his gesture toward humanitarianism was at his own risk. It does not appear in the record that he was promoting or did promote the interest of his employer, directly or indirectly, by his deviation.
*898 In this Court's opinion on suggestion of error [now petition for rehearing] in Brookhaven Steam Laundry v. Watts, 214 Miss. 569, 59 So.2d 294 (1952), it is said:
The fact that Watts was an employee of the Brookhaven Steam Laundry was a contributing cause of Watts' being at the Garrett home that day, but it was in no sense a contributing cause of the willful shooting of Watts by Garrett.
(214 Miss. at 635, 59 So.2d at 300).
Under the undisputed facts and the authorities noticed above, the claimant, in stopping as he did, stepped aside from the duties assigned to him; was not engaged in any activity in the course of his employment; his injuries did not arise out of his duties, and his action was not incidental to or in furtherance of his employer's interest.
I would reverse and render.
SMITH, P.J., and SUGG and BROOM, JJ., concur.