BRANTLEY, J.,
for the court.
¶ 1. The Workers’ Compensation Commission awarded Lou Ann Keyes permanent partial disability benefits resulting from the industrial loss of use of her upper extremities due to a work-related injury while employed by Peco Foods of Mississippi, Inc. The circuit court affirmed the Commission’s award. - Peco appeals,-arguing that the Commission erred in finding that Keyes was not occupationally disabled prior to her employment with Peco Foods. Finding no error, we affirm.
*776 FACTS
¶ 2. Keyes filed a petition to controvert on November 25, 1998, for injury to her bilateral upper extremities during the course and scope of her employment with Peco Foods. A hearing was held on July 5, 2000. Keyes testified at the hearing. Depositions from Dr. Alan Freeland and Dr. Edward R. Turnbull was admitted into evidence.
¶ 3. At the time of the hearing, Keyes was forty-three years old with a ninth grade education and no specialized training. She began working at age fifteen primarily pressing materials for Stevens Sportswear Factory. Keyes worked there for eighteen years until 1993. Keyes testified that she had one complaint of hand problems during that time which she reported to Dr. Cleveland Johnson on August 28, 1992, during an examination for Social Security benefits. Keyes was denied Social Security disability, which was sought for a wide range of medical problems. Dr. Johnson diagnosed Keyes with an impression of hypertension and probable carpal tunnel syndrome; however, no neurological evaluation or nerve conduction studies were preformed to confirm or rule out this possible diagnosis. Keyes returned to Stevens, but left in 1993.
¶ 4. In July 1995, Keyes began working at Piggly Wiggly as a deli worker until June 1996. During this time, Keyes testified that she had no complaints or doctor visits concerning her hands. After leaving Piggly Wiggly, Keyes applied for Social Security disability benefits due to anemia, which was again denied. Keyes testified that the anemia is now under control.
¶ 5. In May of 1997, Keyes began working at Peco Foods as a trimmer with an average weekly wage of $296 per week. The administrative law judge found that Keyes had passed a pre-employment physical prior to beginning her employment. Keyes testified that her position as a trimmer required her to use her hands repetitively all day, using scissors and a knife, while cutting chickens. She stated that when the scissors became dull, the process was more difficult.
¶ 6. Keyes began having problems with her hands while at Peco. She reported the problems to her employer. On July 15, 1998, Keyes was referred by Peco Foods to Dr. Edward R. Turnbull, whose deposition will be discussed below. Dr. Turnbull sent her to Dr. Don Carpenter who performed a nerve conduction study that showed advanced right carpal tunnel syndrome and moderate left carpal tunnel syndrome. Surgery was performed on both hands on July 30, 1998. She was released to return to work on August 4, 1998; however, she returned to work the following day.
¶ 7. After returning to work, Keyes worked in the break room for approximately eight weeks. Thereafter, she made packages for the workers. Then she began keeping the floor clean. Later she was returned to her position as a trimmer. She complained of continued problems with her hands, but was told she had to continue working due to the fact that she had been released for work by Dr. Turn-bull. However, she quit Peco Foods due to her inability to perform her job.
¶ 8. Keyes then went to see her family doctor, who referred her to Dr. Alan Free-land. Dr. Freeland performed a second surgery on her left hand. Keyes has not returned to work since that time. She testified that she has trouble lifting and picking up items while performing household tasks, has trouble driving, and repetitive type movements cause her problems.
¶ 9. Dr. Freeland, by deposition, testified that he first saw Keyes on November 5, 1998, at which time she had bilateral *777 carpal tunnel syndrome and Raynaud’s disease and cold intolerance. He testified that Keyes has had hand pain since 1992. However, her symptoms became significant while working at Peco Foods. Dr. Freeland opined that Keyes had a preexisting problem prior to her job at Peco Foods; however, her work at Peco Foods aggravated the condition causing her symptoms to appear.
¶ 10. Dr. Freeland last saw Keyes on June 17, 1999, at which time she had undergone a functional capacity evaluation which showed that although she could do what was required for the test, she could not do so continually for eight hours per day for five days a week. Dr. Freeland declared her to be at maximum medical improvement, giving her a five percent permanent partial impairment rating for each hand. She was restricted to work at light levels from zero to ten pounds of weight. She was restricted from climbing, working at heights, continuous overhead work, continuous work with arm extended, vibrations, and working in cold temperatures lower than room temperature. Dr. Freeland also stated that she could do work at higher forces and weights in less repetitive work, but that as with any job, breaks would be necessary.
¶ 11. Dr. Edward Turnbull, by deposition, testified' that he first saw Keyes on July 15, 1998. He took a history which revealed that she was right handed and had developed hand pain approximately a year prior to this visit, while working for Peco Foods. A nerve conduction study was performed which showed advanced carpal tunnel syndrome. Surgery was performed on both hands on July 30. Dr. Turnbull released her for modified work duty on August 4, 1998, and full work duty on October 2, 1998. Although she continued to have pain, Dr. Turnbull found that she had reached maximum- medical improvement on November 16,1998. .
¶ 12. Dr. Turnbull stated that Keyes’s work at Peco Foods could have exacerbated her symptoms, but could not state as a reasonable certainty that the work aggravated her pre-existing problems. However, he did state that her work at Peco Foods aggravated the carpal tunnel to the point of creating her symptoms. A nerve conduction study was performed on Keyes in November of 1998. From this study, Dr. Turnbull opined that Keyes had a twenty-five percent permanent impairment rating to the right side and a ten to fifteen percent impairment rating to the left side.
¶ 13. Sam Cox, a vocational rehabilitation expert, testified that he interviewed Keyes and reviewed her medical records on behalf of Peco Foods. He found that she would be limited to light work duty. In addition, he found that she was employable and provided.a listed of possible jobs. However, Keyes testified that she applied, but was unable to find employment at the employers listed by Mr. Cox.
¶ 14. The administrative law judge found that the injury was work related and awarded benefits for a fifty percent industrial loss of use to the right upper extremity and thirty percent industrial loss of use to the left upper extremity. This order was affirmed by the Full Commission and the Circuit Court of the Second Judicial District of Jasper County. Peco Foods appeals this order, arguing that the Commission erred in finding that Keyes’s injury was not a pre-existing occupational disability.
DISCUSSION OF THE ISSUE
STANDARD OF REVIEW ,
¶ 15. The standard of review for workers’ compensation, cases has been clearly stated. The findings and order of *778 the Commission should not be reversed unless they are not supported by substantial evidence or clearly erroneous. Liberty Mut. Ins. Co. v. Holliman, 765 So.2d 564(¶ 6) (Miss.Ct.App.2000). Findings by the Commission which are supported by substantial evidence must remain undisturbed even when the reviewing court would not find the same. Olen Burrage Trucking Co. v. Chandler, 475 So.2d 437, 439 (Miss.1985). Liberal construction is applied to the compensation statutes and where a question may exist, the issue is often found in favor of the claimant and awarding compensation. Big ‘2’ Engine Rebuilders v. Freeman, 379 So.2d 888, 889-90 (Miss.1980).
WHETHER THE FULL COMMISSION ERRED IN AFFIRMING THE FINDINGS OF THE ADMINISTRATIVE LAW JUDGE THAT KEYES’S CARPAL TUNNEL SYNDROME WAS NOT 100% PRE-EXISTING AND THAT THE CLAIMANT WAS NOT OCCUPATIONALLY DISABLED PRIOR TO HER EMPLOYMENT AT PECO FOODS.
¶ 16. The sole issue on appeal is whether Keyes was occupationally disabled prior to her employment with Peco Foods. The Commission found that Keyes had prior problems with her hands, but that those problems were not occupationally disabling. Thus, there was no duty to apportion. Peco Foods argues the prior problems Keyes suffered with her hands present a clear case for apportionment.
¶ 17. According to the workers’ compensation statute, when a pre-existing condition materially contributes to the disability, then benefits must be apportioned. Miss.Code Ann. § 71-3-7 (Rev.2000).
This section states the following:
[w]here a preexisting handicap, disease, or lesion is shown by medical findings to be a material contributing factor in the results following the injury, the compensation which, but for this paragraph, would be payable shall be reduced by that proportion which such preexisting handicap, disease, or lesion contributed to the production of the results following the injury.

Id.

¶ 18. As stated above, pursuant to our standard of review, if the Commission’s fact finding is supported by substantial evidence, then it will not be reversed by the reviewing court. R.C. Petroleum, Inc. & Travelers Ins. Co. v. Hernandez, 555 So.2d 1017, 1021 (Miss.1990). Here, the Commission’s order was clearly supported by substantial evidence which requires this court to affirm.
¶ 19. At the time of the hearing, Keyes was a forty-three-year-old female with a ninth grade education. Her work history consists of manual labor requiring the use of both upper extremities. This work was in a garment factory for approximately eighteen years and the deli of a supermarket for one and one half years. She had some prior problems with her hands, but none that resulted in a disabling condition. In a Social Security disability claim, she included her hand complaints along with other medical problems. She testified that her claim was mainly for anemia, which is now under control. This claim was ultimately denied, with the Social Security Commission finding Keyes did not have a disability.
¶ 20. Following her injury at Peco Foods, she was initially seen by Dr. Turn-bull, upon referral by Peco Foods. He operated on both hands and released her to work. He testified that her injuries were aggravated by her work at Peco from the standpoint that it created the symptoms. Dr. Turnbull prescribed a twenty-five percent permanent impairment rating to Keyes’s right side and a ten to fifteen *779 percent permanent rating to her left side. He further opined that Keyes would probably not be suited for repetitive work. However, he did not testify that Keyes was occupationally disabled prior to her employment with Peco Foods.
¶ 21. Keyes was next seen by Dr. Free-land at the University Medical Center. Dr. Freeland testified that Keyes was continuing to have problems after the initial surgery. A second surgery was performed on Keyes’s left hand. Dr. Free-land stated that Keyes would be able to do repetitive work, but would have to take breaks. He testified that Keyes’s hand problems were pre-existing, but her work at Peco Foods aggravated her problems. Additionally, Dr. Freeland did not testify that Keyes was occupationally disabled prior to her employment with Peco Foods.
¶ 22. Peco Foods’s main argument centers'around the fact that Keyes applied for Social Security benefits and that she was out of work for extended periods of time between the clothing factory, deli and Peco Foods. Specifically, Peco Foods argues that due to the loss of wage earning capacity from these periods that Keyes was occupationally disabled prior to working at Peco Foods.
¶23. In Stuart’s, Inc. v. Brown, the Mississippi Supreme Court addressed the issue of apportionment of compensation. Stuart’s, Inc. v. Brown, 543 So.2d 649, 655-56 (Miss.1989). The court stated that when “(1) there is evidence of a medically cognizable, identifiable, symptomatic condition which antedated the injury; and (2) the employee experienced some absence of normal wage earning capacity, then apportionment must be ordered.” Id. at 656. Only when an employee has a “pre-existing occupational disability” is there a requirement to apportion the benefits payable. Id. Therefore, if the employee’s wage-earning capacity is reduced because of the pre-existing occupational disability, the .employer is entitled to a reduction in benefits. Id. at 655.
¶ 24. Although, Keyes was out of work for extended periods of time, Keyes stated that these times were due to a number of medical problems. Additionally, the applications for Social Security benefits show that she had a number of problems which included her hands. However, she testified that she had not seen a doctor for any hand trouble during her time at the deli until she was referred to Dr. Turn-bull during her employment with Peco Foods.
¶ 25. The administrative law judge and the Commission agreed that Keyes suffered no prior occupationally disability which would require apportionment. The administrative law judge’s order, relying on Stuart’s, Inc., found that although she had some prior hand pain dating back to 1992, Keyes was not occupationally disabled prior to her work at Peco Foods. Specifically, the ■ order, relied on the medical testimony that proved that Keyes’s work at Peco Foods aggravated her problems causing the symptoms of bilateral carpal tunnel syndrome to appear. As the substantial evidence supports the Commission’s award, we will not reverse.
¶ 26. THE JUDGMENT OF THE JASPER COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS ARE TAXED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS AND CHANDLER, JJ„ CONCUR.