DURR'S DEPENDENTS *v.* SCHLUMBERGER OIL WELL SURVEYING CORP., et al.

No. 40019          April 9, 1956          86 So. 2d 507

*Cohn, Hobbs & Hobbs,* Brookhaven, for appellants.

*Watkins & Eager,* Jackson, for appellees.

GILLESPIE, J.

Appellants' decedent, Solon E. Durr, was killed in an automobile accident, and claim was made for benefits under the Workmen's Compensation Act. The claim

was denied by the attorney-referee, the full commission, and the circuit court, and appellants appeal here.

Durr was employed by the Schlumberger Oil Well Surveying Corporation at Brewton, Alabama. The employer maintained various places of business including one at Laurel, Mississippi. Durr obtained from the manager of the Brewton, Alabama station, who was Durr's superior, permission to be relieved of duty on special leave to attend to some personal matters. No time limit was placed on the time Durr could be off duty. Pursuant to this arrangement, Durr left Brewton on Thursday, February 19, 1953, to take his wife and some of her belongings to Brookhaven, Mississippi. Durr used his personal automobile to make the trip. Under company rules, this automobile was not to be used for any business of the employer. Durr and his wife arrived at Brookhaven about 2:30 o'clock A.M. on Friday, February 20, where Durr slept for a few hours. He left Brookhaven about 11:00 o'clock A.M. Friday and drove to Laurel, Mississippi, where he arrived during the afternoon. Durr had no duties to perform at or near Laurel, and was not subject to orders from anyone at the Laurel office of his employer, but he was in and around the Laurel office during the afternoon. Part of this time was spent with one Minninger, the senior operator from the Brewton Station, who had come to Laurel to return to Brewton a truck previously brought to Laurel by Durr and another for repairs. Minninger did not accept Durr's offer to assist in driving the truck back to Brewton. Durr was under no orders to report to the Laurel office, and his visit there was voluntary on his part. Durr was with Minninger when the truck was released from the garage about 7:00 o'clock P.M., and Durr assisted Minninger in backing the truck out of the garage by watching to see that he did not back into something. That was the last time anyone saw Durr alive. He was killed in an accident while driving his personal car about

six miles south of Laurel at 2:00 A.M., Saturday morning, February 21, 1953, and while enroute from Laurel to Brewton.

Sometime prior to the dates mentioned, the manager of the Brewton Station had instructed Minninger to bring from Laurel to Brewton some old files that belonged in the Brewton office. Minninger was instructed to bring them at some convenient time when the files had been gotten together at the Laurel office. The files were not current and did not relate to current work. These files had been placed in a box by an employee of the Laurel office, and on Friday while Durr was in Laurel, Minninger secured the files from the Laurel office to take to Brewton, but instead of putting them in the truck he was to drive back to Brewton, he placed them in Durr's personal automobile, thinking that that would be a cleaner method of taking them to Brewton. He did not tell Durr that he put the files in his automobile, and as far as he knew, Durr did not know the files were in his automobile. These files were in Durr's automobile when the accident occurred in which Durr was killed.

The sole question in this case is whether Durr's death arose out of or in the course of his employment. Several contentions are made by appellants in this connection, but the only one worthy of comment is whether the presence of the company files in Durr's automobile was such a circumstance that the case is compensable under the dual purpose doctrine.

Durr had traveled in his personal automobile from Brewton to Brookhaven, thence to Laurel, where he spent several hours in and around the Laurel office of his employer. But he was under no orders to report to Laurel, had no duty to perform there, and his visit to Laurel enroute to Brewton was purely voluntary on his part. His whole trip was to accomplish a personal mission, and he had obtained special leave to be away from his work for an indefinite time, limited as to time only

by the necessities of his personal affairs. Durr was unaccounted for during the time that elapsed from the time Minninger saw him about 7:00 P.M. Friday until he was killed at 2:00 A.M. Saturday, about nine hours. His duty status would not begin until he returned to Brewton.

"All of these widely-assorted (dual purpose) problems can best be solved by the application of a lucid formula stated by Judge Cardozo in Marks v. Gray— a formula which, when rightly understood and applied, has never yet been improved upon. Judge Cardozo said: 'A servant in New York informs his master that he is going to spend a holiday in Philadelphia, or perhaps at a distant place, at San Francisco or at Paris. The master asks him while he is there to visit a delinquent debtor and demand payment of a debt. The trip to Philadelphia, the journey to San Francisco or to Paris, is not a part of the employment. A different question would arise if performance of the service were to occasion a detour, and in the course of such detour the injuries were suffered. . .

"'We do not say that service to the employer must be the sole cause of the journey, but at least it must be a concurrent cause. To establish liability, the inference must be permissible that the trip would have been made though the private errand had been canceled . . . The test in brief is this: If the work of the employee creates a necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his on . . . If, however, the work has had no part in creating the necessity for travel, if the journey would have gone forward though the business errand had been dropped, and would have been canceled upon failure of the private purpose, though the business errand was undone, the travel is then personal, and personal the risk.'" Larson's Workmen's Compensation Law, Vol. 1, Sec. 18.12, page 241.

Since Durr had to get back to Brewton before his special leave ended, and before his personal mission was completed, we must conclude, as did the attorney-referee and commission, that the sole motivation for the travel from Laurel to Brewton was Durr's personal mission. The presence of the files in his automobile was of some benefit to the employer, but it was merely incidental. The sole purpose of the trip was personal to Durr. The files had nothing to do with creating the necessity for the trip. The travel and the risks were personal.

The conclusion reached by the attorney-referee and the commission was supported by the overwhelming weight of the evidence.

Affirmed.

*McGehee, C.J.,* and *Lee, Arrington* and *Ethridge, JJ.,* concur.