BRYAN BROTHERS PACKING CO. *v.* DEPENDENTS OF MURRAH

No. 40900          November 24, 1958          106 So. 2d 675

*Harvey S. Buck, Thos. J. Tubb,* West Point, for appellants.

*W. J. Threadgill, Ben Owen,* Columbus, for appellees.

ARRINGTON, J.

Mrs. Martha S. Murrah, Thomas Scott Murrah, and Linda Kay Murrah, filed their claim against Bryan Brothers Packing Company and its insurance carrier to obtain benefits under the Mississippi Workmen's Compensation Law for the death of Thomas B. Murrah, their husband and father. The attorney-referee found that Murrah's death arose out of and in the course of his employment. On review, the Workmen's Compensation Commission, in a two to one decision, reversed the order of the attorney-referee, and held that Murrah's death did not arise out of and in the course of his employment. The Circuit Court of Attala County reversed the Commission, and awarded death benefits, from which judgment the employer and its insurance carrier appeal.

Since the facts as stated by the attorney-referee are in accordance with the stipulations of the parties and the undisputed testimony, we set them out, as follows:

"The evidence shows that at about 10 P.M. on May 21, 1956, Thomas B. Murrah, a route salesman for Bryan Brothers Packing Company, was killed instantly when driving his employer's automobile northward on Highway 35 some 14 miles north of Kosciusko. He was alone in the car, and presumably a blowout caused the car to go over a 50-foot embankment on the side of the road.

"Murrah lived in West Point, and his usual route began each Monday at Maben and extended west on U. S.

Highway 82 to Winona, thence southward on U. S. Highway 51 to Vaiden, thence southeastward on Highway 35 to Kosciusko where he would spend the night, and the next day northeastward along Highway 12 to Starkville. His job was to sell meat and make collections at various small grocery stores and cafes along his route. He had regular customers, but it was also his job to acquire new customers. Bryan Brothers owned the car he used, and they paid his travel expenses. He had complete freedom to call on any customers at any time, and he was the judge of his own working hours.

"On this particular Monday on which he was killed, Murrah had left home Monday morning 'in a hurry' to finish his first half week's work as early as possible, so he could attend his son's graduation from the eighth grade on Wednesday afternoon. He had worked his usual route as far as Kosciusko, calling on some 23 customers in Winona and five in Vaiden. That afternoon late he had worked three Kosciusko customers whom he usually saw the following day. He had taken the order from the last one shortly after 6 P.M., and then he had assisted the customer in cutting up meat and arranging a meat display. He had checked into Bailey's Court in the north part of Kosciusko and had removed his various records from the car. He had eaten supper at a cafe next door. He left a call at the tourist court to be awakened at 6:30 the next morning. About 8 P.M. he had telephoned a customer in Winona and asked him when he was going to buy some beef from him, and the customer had told him that he was going to continue to buy beef from Swift.

"The record is silent as to his activities for the next hour and a half or more, but it may be inferred that during that period of time he worked some on his sales and collection records, because all of them were later found to be up to date with his activities of the day, and the cash and checks he had collected were later found in the

tourist court and balanced out with his 'collection report', which consisted of two sheets of paper that Murrah had filled out and which was introduced as an exhibit at the hearing.

"Before 10 P.M. the night clerk in the tourist court talked with Mr. Murrah and did not detect any odor of alcohol or any evidence of his drinking.

"Shortly thereafter, Murrah apparently left the tourist court and Kosciusko, because the next evidence is of the collision and his death. At the time, he was carrying his large 'strap wallet' which he carried for the purpose of collecting his employer's money. It had $4 in it, which $4 belonged to Murrah. He also had a 'personal wallet', which was found the next morning at the scene of the accident. It contained no money.

"About 4 A.M. two Bryan Brothers employees identified his body and found his records in his room at the tourist court. The light was off, but the air conditioner was on. Murrah had signed the first page of his collection report, which was completely filled out, but the second page had the last Kosciusko collection on it and still had about three blank lines remaining at the bottom of the page. Murrah had not signed it.

"The two Bryan Brothers employees proceeded on to the scene of the accident, arriving there after daylight. They found the demolished Bryan Brothers car pulled upon the highway and went through it, finding no records or sales books in it, nor any other equipment that a salesman would normally have with him if working a sale or collection. However, they admitted that a salesman might well make a collection or sale without such equipment. They described Murrah as a 'good salesman.'
* * * * *

"In Vaiden the afternoon before, Murrah had told a customer that he had 'missed' a good Winona customer, because the customer had been in Greenwood that day, and that he had to contact the customer 'before I go to

bed tonight.' However, C. V. Howard, one of Murrah's customers, had been in Greenwood when Murrah passed through Winona, and Murrah had telephoned him from Vaiden and had gotten an order.

"All 28 of the Winona and Vaiden customers stated Murrah had contacted them that Monday and that so far as they knew, there was no reason why he should be returning to see them prior to his next regular trip. However, they further stated that they knew of no personal reason why he would be returning toward Winona or Vaiden that night."

The sole question presented is did Murrah's death arise out of and in the course of his employment. The appellant contends that his death occurred late at night at a time beyond his regular working hours; that he was not at a place where he would normally be expected to be; that he did not have with him the "tools of his trade" —books, supplies, etc., in order that he might transact business for the master.

■■ ■ We have held that a traveling employee as being in the course of his employment from the time he leaves home on a business trip until he returns and the employment covers both time and place of travel except in deviation cases or where he was on a personal mission or errand of his own. Badon Refrigeration Co. v. Badon, 95 So. 2d 114; Dunn, Mississippi Workmen's Compensation Law, Sec. 103.

In Major, et al. v. Alsup, 216 Miss. 607, 63 So. 2d 113, we held: "It is generally held that when it is shown that an employee was found dead at a place where his duties required him to be, or where he might properly have been in the performance of his duties during the hours of his work, in the absence of evidence that he was not engaged in his master's business, there is a presumption that the accident arose out of and in the course of the employment within the meaning of the compensation acts."

■■■ We are of the opinion that the claimants in this case met the burden of proof by showing that the deceased, a traveling salesman, was traveling over a highway he might properly be expected to travel in the course of his employer's business. Under such circumstances, the law presumes he was about the business of his employer. "Employees whose work entails travel away from the employer's premises are held in the majority of jurisdictions to be within the course of their employment continuously during the trip, except when a distinct departure on a personal errand is shown. Thus, injuries arising out of the necessity of sleeping in hotels or eating in restaurants away from home are usually held compensable." Larson's Workmen's Compensation Law, Sec. 25, p. 384. See also Dunn, Mississippi Workmen's Compensation Law, Sec. 166.

Murrah was the judge of his working hours and it is shown that he did part of his work at hours other than the normal hours of work, including night time. He was killed on the highway which his work required him to traverse, even though he was traveling in the direction of a town he had already worked. Under the rule stated, he is presumed to have been returning to Vaiden or Winona for some purpose connected with his work for his employer, in the absence of any evidence that he was on a personal mission or errand of his own. According to the testimony of the superintendent and the sales manager for Bryan Brothers Packing Company, the deceased was a good salesman, and we do not think that the fact that he left his order books, etc., "tools of his trade" as referred to, at the tourist court is sufficient to rebut the presumption that he was in the course of his employment. It was shown that he did not need these items to take an order, solicit a new customer, or make a collection for his employer. He did have with him at the time he was killed the strap wallet used in collecting money for his employer.

██ ██ We are of the opinion that the claimant met the burden of proof in this case by proving facts sufficient to raise the presumption. And since there is no substantial evidence to rebut the presumption, the finding of the Commission that Murrah was not killed in the course of his employment is without basis. Vestal & Vernon Agency, et al. v. Pittman, 219 Miss. 570, 69 So. 2d 227. It follows that the judgment of the circuit court awarding compensation is affirmed, and the cause is remanded to the Commission. Our judgment will carry with it the ten percent penalty on all past due payments.

Affirmed and remanded.

*McGehee, C. J.,* and *Kyle, Ethridge* and *Gillespie, JJ.,* concur.