374 So.2d 235 (1979)
SMITH AND JOHNSON, INC. & Northern Assurance Company
v.
Herbert EUBANKS, Deceased, Dependents of (Mrs. Vera Eubanks, Wife & Herbert Eubanks, Jr., Son).
No. 51390.
Supreme Court of Mississippi.
August 22, 1979.
Lumpkin, Holland, Ray & Upchurch, W. Reed Hillen, Tupelo, for appellant.
Hathorn & Hathorn, Stanley H. Hathorn, Louisville, for appellee.
Before SMITH, P.J., and LEE and BOWLING, JJ.
BOWLING, Justice, for the Court:
This workmen's compensation appeal is from the Circuit Court of Lee County. Both the administrative judge and the Compensation Commission denied death benefits to the wife and minor child of Herbert Eubanks, deceased. On appeal to the circuit court, the cause was reversed and compensation ordered paid to appellees under the provisions of the compensation statutes. The employer and carrier appeal.
The employee, Herbert Eubanks, and his family lived in Louisville, Mississippi. For a number of years, Eubanks had worked for appellant, Smith and Johnson, Inc., as a foreman. The employer was engaged primarily in the business of pipeline construction in various localities, wherever a contract was secured for such work. At the time of Eubanks' death, the employer was engaged in constructing a pipeline near Tupelo, a distance of around eighty miles from Louisville. The employer, during the years of Eubanks' employment and wherever the construction work was being performed, furnished Eubanks a pickup truck and paid all expenses. The record shows that in addition to using the truck for transportation to the job sites, it was used to haul other employees, equipment, and any other type of vehicle activity required to be performed around the pipe-laying job.
During the course of completing the contract hear Tupelo, Eubanks was required to spend each week there, with his work week beginning early on Monday morning and ending either on Friday or Saturday afternoon. During the week, Eubanks stayed at a local motel and ate his meals at various locations.
The date of Eubanks' death was Monday, March 31, 1975. He left his home in Louisville early that morning and drove directly to the company's job site near Tupelo. As stated, Eubanks' job included supervision over a number of employees during one *236 phase of the laying of the pipeline. During the course of the day on Monday, it was determined that because of excessive rain the previous day no further work could be done. Sometime around the middle of the afternoon, Eubanks went in the pickup truck to the motel in Tupelo where he had been staying during the week. He had not checked in prior to going to the job. He first performed this activity and then carried his week's clothing to his room. At about 7:30 P.M., the pickup truck, operated and occupied solely by Eubanks, was involved in a collision a short distance south of the outskirts of Tupelo at the intersection of the Natchez Trace Parkway and Palmetto Road. Eubanks died as a result of this collision.
Appellants contend that the circuit court was in error for the reason that the claimant failed to meet the burden of proof that the accident arose out of and in the course of Eubanks' employment.
The appellants introduced the only evidence as to the probable activity of the deceased at the time of the collision. They introduced Mrs. Lillie Bell Witcher, operator of the motel where Eubanks was staying during the week while the construction job was in progress. She testified that on the day in question, Eubanks checked into the motel somewhere between two and four o'clock P.M. Mrs. Witcher further testified that since the motel did not have a restaurant, she would on occasions cook specially in her kitchen for a few "regular" guests; that upon asking Eubanks if he wanted her to cook supper for him that night, he replied: "No, I won't be here for supper, 'cause I'm going down to Shannon and eat with my old cousin." She did not see Eubanks after that conversation.
The appellants introduced Jack Smith, superintendent of the employer-company. He described the foreman-connected duties required of the deceased, stating that the work day commenced at either 6 or 6:30 A.M. and usually ended around 5:30 or 6 P.M., although sometimes the deceased would work until 7 or 7:30 P.M. Upon being asked specifically what authority Eubanks had to use the truck in connection with his being in Tupelo, Smith answered:
They get from the job site to the motel and then use it to go out and eat at a restaurant, or go to the Seven-Eleven Food Store to get something, shaving cream, but not any fashion that it was a personal vehicle to them. They were not allowed to go to bars and so forth like that.
On cross-examination, Smith again stated that Eubanks was allowed to "go out and eat" in the company truck that he alone used from the time he left Louisville until he returned.
Witness Betty McGaughy testified that as the corporate secretary of the company, she was familiar with the duties of supervisory personnel. In answer to a question regarding the policy of the employer furnishing vehicles to some employees for their use, she stated:
Yes, supervisory which would include foreman are furnished pick-ups specifically to be used primarily in the business, which means if they are away from home, such as Mr. Eubanks was, that they do have access to this pick-up for their very necessary needs. That is in addition to getting to and from work and using it on the job.
She further elaborated:
When I say necessary needs, that would be to go eat, to go purchase necessary items, to get to and from places that they might have a need to go at any hour really.
Appellees, the widow and son of Eubanks, testified that on a number of occasions they knew that Eubanks, in preparing for his week's work, would contact prospective employees, using the pickup at company expense, and would haul materials whenever the need arose. On cross-examination, Mrs. Eubanks stated that she knew her husband had a relative who lived in Shannon, a small town a short distance from Tupelo, but that she did not know this relative personally.
Appellees introduced three former employees of appellant-employer. They testified *237 that they lived in or near Louisville, were employed by Eubanks, and rode to and from the job sites with Eubanks in the company-furnished truck. One of them testified that he had worked on the Tupelo job and had roomed with Eubanks at the motel during the week but that on the Monday of Eubank's death he did not go to Tupelo as he had found a job in Louisville over the weekend.
The administrative judge based his opinion denying compensation to appellees solely on the ground that Eubanks was intoxicated at the time the collision occurred. The full Commission properly held that this was error on the part of the administrative judge. The only evidence introduced on that question was the results of a blood test secured by the Natchez Trace Park Ranger from the Mississippi Crime Laboratory in Jackson. Objection was made to the introduction of this evidence at the hearing. The full Commission properly held that the admission of this evidence over objection was erroneous and should not have been considered by the administrative judge. The Commission affirmed the administrative judge's decision, however, but did so on a ground not stated in the latter's opinion. The Commission held that the appellees did not meet the burden of proving that Eubanks' death arose out of and in the course of his employment.
In reversing the Commission, the circuit court judge based his opinion primarily on the case of Bryan Bros. Packing Co. v. Dependents of Murrah, 234 Miss. 494, 106 So.2d 675 (1958). In that case, the employee Murrah was a traveling salesman for Bryan Brothers Packing Company and lived in West Point, Mississippi. During the first part of the week he made his regular rounds which led through Winona and Vaiden. On Wednesday afternoon, he checked in at a motel in Kosciusko. The normal route for him to take to West Point was via a northeasterly direction on Highway 12 to Starkville. At about 10 o'clock on Wednesday night, Murrah was involved in an automobile accident on Highway 35, some fourteen miles north of Kosciusko. He was alone at the time. Murrah's company reports and other material used by him in his work were found in his motel room. There was no evidence as to why Murrah was on Highway 35 at 10 o'clock at night and particularly without his company papers. In holding that the dependents of Murrah were entitled to compensation, this Court stated:
Employees whose work entails travel away from the employer's premises are held in the majority of jurisdictions to be within the course of their employment continuously during the trip, except when a distinct departure on a personal errand is shown. Thus, injuries arising out of the necessity of sleeping in hotels or eating in restaurants away from home are usually held compensable.
In our opinion it was not necessary for the circuit court to rely on the Bryan case. The position of Eubanks was different from that of Murrah. Eubanks' employment during each entire week required him to leave his Louisville home, in a company vehicle, at company expense, and travel many miles to spend the week at a motel in Tupelo. The sole purpose for spending the week in Tupelo was to be available at anytime he was needed on his employer's construction job. It is trite but important to make the statement that certainly the employer did not expect Eubanks to stay in Tupelo the entire week without sleeping or eating. As hereinbefore set out, the only evidence in this record as to Eubanks' destination at the time of his death was presented by the employer and carrier to the effect that he was going to eat supper at his cousin's house in Shannon. Eubanks' vehicle was headed in a southerly direction toward the Shannon Community.
As hereinbefore pointed out, the employer, through its superintendent and corporate secretary, readily admitted that a part of Eubanks' activity while in Tupelo involved eating meals out at various places.
In M.E. Badon Refrigeration Co. v. Badon, 231 Miss. 113, 95 So.2d 114 (1957), a case with facts similar to Bryan, supra, the Court quoted with approval from 58 Am. *238 Jur., Workmen's Compensation section 225, where it was stated that an employee whose duty called him away from home and was injured in connection therewith, was entitled to compensation when the following test is met, to wit:
With respect to the compensability of injuries to employees, the performance of whose duties necessitates their traveling from place to place away from the premises of the employer, sustained while so traveling, as arising out of and in the course of the employment, the right to compensation depends, as in other cases generally, upon whether the injury results from a risk which is inherent in the nature of the employment, or which is reasonably incidental thereto, or to which the employee is specially exposed, and upon whether the employee, at the time of the occurrence of the accident was engaged in the exercise of some function or duty reasonably necessary or incidental to the performance of the contract of employment, ... [Emphasis supplied]
In 1 Larson, Workmen's Compensation Law, section 14, we find the following:
An injury is said to arise in the course of the employment when it takes place within the period of employment, at a place where the employee reasonably may be, and while he is fulfilling his duties or engaging in something incidental thereto. [Emphasis supplied]
In 1A Larson, Workmen's Compensation Law, section 25.21, we find the following:
As to (1), traveling employees, whether or not on call, usually do receive protection when the injury has its origin in a risk created by the necessity of sleeping and eating away from home. The hotel-fire cases are the best illustration of this. Closely related are the injuries sustained in the process of getting meals. So when a traveling man slips in the street or is struck by an automobile between his hotel and a restaurant, the injury has been held compensable, even though the accident occurred on a Sunday evening, or involved an extended trip occasioned by employee's wish to eat at a particular restaurant.
The Georgia Court of Appeals, in Zurich Insurance Co. v. Zerfass, 106 Ga. App. 714, 128 S.E.2d 75 (1962), in a similar case involving an employee's necessity to be away from home during the course of his job, stated:
Applying the settled rules that the act in the course of which the accident arose must be one the employee is directly employed to do or one reasonably necessary to be done in order to perform the act he was employed to do [United States Fidelity & Guaranty Co. v. Skinner, 188 Ga. 823, 829, 5 S.E.2d 9], and that "while lodging in a hotel, or preparing to eat, or while going to or returning from a meal, [the traveling representative of the company] is performing an act incident to his employment, unless he steps aside from his employment for personal reasons."
As hereinbefore stated, the undisputed evidence in the record of this case is stronger for the allowance of compensation to the dependents of Eubanks than in Bryan and the other authorities cited. Eubanks, in reality, was "at work" from the time he left his Louisville home until he returned. His employer required him to be at a certain location, and to stay in that vicinity. As testified to by the employer, Eubanks was in the course of his employment whenever performing activities "incidental" to the requirement that he be in Tupelo. The evidence in this case indicates that at the time of his accidental death, Eubanks was on his way to eat a meal. Therefor we find as a matter of law that the circuit court was correct and the cause should be and it is affirmed.
AFFIRMED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, LEE and COFER, JJ., concur.