# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-WC-00244-COA

**MARTY SIMS**                                                      **APPELLANT**

**v.**

**DELTA FUEL AND NATIONAL UNION FIRE**                   **APPELLEES**
**INSURANCE COMPANY OF PITTSBURGH, PA**

DATE OF JUDGMENT:                01/15/2019
TRIBUNAL FROM WHICH             MISSISSIPPI WORKERS' COMPENSATION
APPEALED:                        COMMISSION
ATTORNEYS FOR APPELLANT:         RAYNETRA LASHELL GUSTAVIS
                                 ROGEN K. CHHABRA
                                 AMANDA GRACE HILL
ATTORNEY FOR APPELLEES:          GINGER MOORE ROBEY
NATURE OF THE CASE:              CIVIL - WORKERS' COMPENSATION
DISPOSITION:                     AFFIRMED - 03/17/2020
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### EN BANC.

### CARLTON, P.J., FOR THE COURT:

¶1.    Marty Sims (Sims) was employed by Delta Fuel when he was involved in an automobile accident on October 21, 2016. A day after the accident, Sims suffered a heart attack. Sims filed a petition to controvert with the Mississippi Workers' Compensation Commission (Commission) claiming that the accident and subsequent medical issues occurred during the course of his employment. Following a hearing, the administrative judge (AJ) entered an order denying Sims's claim for workers' compensation benefits, finding that neither Sims's motor vehicle accident nor his heart attack arose out of and in the course of employment. Sims appealed the decision to the Commission. After oral argument, the

Commission entered an order on January 15, 2019, adopting and affirming the AJ's order. Sims appeals.

¶2. For the reasons stated below, we find that the Commission's order affirming and adopting the AJ's order in full is supported by substantial evidence and that the dual-purpose test, *see infra* ¶19, was properly applied. We therefore affirm the Commission's order adopting the AJ's determination that Sims's October 21, 2016 motor vehicle accident did not occur in the course and scope of employment.

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

¶3. Sims was employed as a traveling salesman for Delta Fuel. Delta Fuel provides oil, lubricants, and fuel to commercial clients. Sims's job was to secure and service business accounts in the southeastern part of Mississippi. He routinely made sales calls to existing customers as well as potential new ones.

¶4. Sims's older brother, Rodney Sims, was also employed by Delta Fuel and worked in Delta Fuel's Ferriday, Louisiana office. The record reflects that Rodney would sometimes assist his brother with the names of potential clients and product information. They communicated in person, by telephone, through email, or by text messaging.

¶5. Sims was involved in a motor vehicle accident on Friday, October 21, 2016, as he was turning off Highway 469 onto a private drive at Huckleberry Hill, property which was owned or leased by Sims's brother Rodney and used for recreational deer hunting.

¶6. Before the accident that day, Sims made sales calls at Howard Transportation in Ellisville, Mississippi, and Cliburn Tank Lines in Florence, Mississippi. Sims also testified

2

at the hearing that he planned to make a final business call at Partridge Sibley in south Jackson, Mississippi, before 5:00 p.m. that Friday afternoon. On cross-examination at the hearing, Sims admitted that when he was deposed in this matter, he did not mention Partridge Sibley or that he planned on a final sales call to that location. Sims testified at the hearing that "[i]t probably slipped his mind." Sims did not make it to Partridge Sibley because of his motor vehicle accident.

¶7.    Cliburn Tank Lines is located on Highway 49 in Florence, Mississippi. Partridge Sibley is located on Savannah Street in south Jackson, Mississippi. Instead of traveling due north on Highway 49 from Cliburn Tank Lines to Partridge Sibley, Sims traveled southwest on Highway 469 toward Crystal Springs. Sims testified that he was traveling to Huckleberry Hill at the time of the motor vehicle accident.

¶8.    As noted, Huckleberry Hill was owned or leased by Rodney and used for recreational deer hunting. Sims and Rodney intended to plant food plots at Huckleberry Hill on Saturday, October 22, 2016. Sims traveled to Huckleberry Hill on Friday afternoon, at Rodney's request, to deliver a four-wheeler in preparation for planting food plots on Saturday. Sims and his supervisor at the time, Steve Whittington, acknowledged at the hearing that delivering the four-wheeler to Huckleberry Hill was not related to Sims's employment with Delta Fuel. The collision occurred when Sims turned off Highway 469 onto a private drive at the Huckleberry Hill property.

¶9.    Sims testified at the hearing that he was also traveling to Huckleberry Hill to "drop off" a Delta Fuel product list for Rodney's review. Sims acknowledged at the hearing that

he knew Rodney would not be there at the time. Rodney also testified he was not at Huckleberry Hill on Friday afternoon, and when he called Sims on Friday morning to ask him to deliver the four-wheeler to Huckleberry Hill, Sims did not mention to him that he had any intentions of reviewing a product list. Rodney further testified that Sims did not mention the product list on Friday afternoon when he (Rodney) got to the scene of the accident, nor did he mention it on Saturday morning when they met to plant food plots. Rodney testified that he did not recall that they were meeting to review a product list, and he acknowledged that as far as he knew, Sims was going by Huckleberry Hill to drop off the four-wheeler that Rodney had asked him to drop off earlier that morning.

¶10. Sims also testified at the hearing that in addition to delivering a product list to Huckleberry Hill, he intended to drive to his home in Crystal Springs after leaving Huckleberry Hill to pick up a form he would need for his business call at Partridge Sibley in Jackson. However, Whittington, Sims's supervisor, testified that Delta Fuel provided Sims with a computer and portable printer for his truck, the form was online, and the "simplest thing to do [to get the form] would be to print it off in [Sims's] truck." Sims also testified that Delta Fuel provided a laptop and a portable printer that he could carry in the truck with him, and the record does not reflect any evidence or testimony that Sims's printer was not available for use on the day of the motor vehicle accident or that he could not access the online form.

¶11. Edward Barber, the person driving the second vehicle involved in the motor vehicle accident on October 21, 2016, testified at the hearing. He testified that he lives on Highway

469 near Huckleberry Hill and knew Sims. Barber spoke to Sims at the scene of the accident, and Barber testified that Sims told him he had planned to "fix" a food plot, and, if he had time, to go hunting on that Friday afternoon.

¶12. After the accident, Sims sought medical treatment at the MEA Clinic in Richland, Mississippi. He then met Rodney and other family members at Jerry's Catfish House in Florence, Mississippi, for dinner that evening. On Saturday morning, Sims met Rodney, his other brother (Shaine Sims) and others, to plant food plots and hang a deer stand. While hanging the deer stand, Sims experienced acute chest pain. He was ultimately transported to the University of Mississippi Medical Center, where he was treated for a heart attack.

¶13. On January 27, 2017, Sims filed his petition to controvert claiming the accident and subsequent medical issues occurred during the course of his employment. In February 2017, Delta Fuel filed an answer denying that the claim was compensable. Following a March 20, 2018 hearing, the AJ entered an order on July 20, 2018, denying Sims's claim for workers' compensation benefits. She found that neither Sims's motor vehicle accident nor his heart attack arose out of and in the course of employment. The AJ determined that Sims was on a dual-purpose trip on October 21, 2016, having both personal and business purposes. She further concluded that but for the personal mission, the business mission would not have compelled Sims's travel at the time and place of the motor vehicle accident. Under this analysis, the AJ determined that the risk of Sims's trip was personal and that the injuries resulting from the accident did not arise in the course and scope of employment.

¶14. Sims appealed the decision to the Commission. After oral argument, the Commission

5

entered an order on January 15, 2019, adopting and affirming the AJ's order. Sims appeals.

## STANDARD OF REVIEW

¶15. An appellate court's review in a workers' compensation case "is limited to determining whether the Commission's decision was supported by substantial evidence, was arbitrary and capricious, was beyond the scope or power of the agency to make, or violated [the claimant's] constitutional or statutory rights." *Gregg v. Natchez Trace Elec. Power Ass'n*, 64 So. 3d 473, 475 (¶8) (Miss. 2011). In this regard, an appellate court's review of the facts on appeal "is not with an eye toward determining how [the appellate court] would resolve the factual issues were [it] the [trier] of the fact; rather, [the appellate court's] function is to determine whether there is substantial credible evidence which would support the factual determination made by the Commission." *S. Cent. Bell Tel. Co. v. Aden*, 474 So. 2d 584, 589 (Miss. 1985). "Substantial evidence is such relevant evidence as reasonable minds might accept as adequate to support a conclusion." *Choctaw Resort Dev. Enter. v. Applequist*, 161 So. 3d 1134, 1137 (¶6) (Miss. Ct. App. 2015) (internal quotation mark omitted). If there is "such substantial credible evidence, [the appellate court is] without authority to disturb that which the Commission has found, even though that evidence would not be sufficient to convince [the appellate court] were [it] the [factfinder]." *Aden*, 474 So. 2d at 589-90. "This Court affords de novo review to the Commission's application of the law." *Gregg*, 64 So. 3d at 475 (¶9).

## DISCUSSION

¶16. Sims asserts that under Mississippi law, the October 21, 2016 motor vehicle accident

6

and injuries, including the heart attack, are compensable because the accident arose out of and occurred in the course and scope of his employment as a traveling salesman with Delta Fuel. Sims argues the decision of the AJ, as affirmed by the Commission, was not supported by sufficient evidence and that the Commission improperly applied the "dual-purpose test" in determining that the accident did not occur during the course and scope of his employment.

¶17. As detailed below, we find that the dual-purpose test was properly applied. We further find that in the light of the limited standard of review that this Court is bound to apply in a workers' compensation case, the Commission's order affirming and adopting the findings of fact made by the AJ in full is supported by substantial evidence.[1] We therefore affirm the Commission's order affirming and adopting the AJ's order in full.

¶18. An injury is only compensable under the Act if it occurs in the course and scope of employment. Miss. Code Ann. § 71-3-3(b) (Rev. 2011). As the AJ recognized in her order, Sims is a "traveling employee" defined under Mississippi case law as "[an] employee[] whose work takes [him] away from the employer's premises[.]" *Lane v. Hartson-Kennedy Cabinet Top Co.*, 981 So. 2d 1063, 1068 (¶12) (Miss. Ct. App. 2008). A traveling employee is "held to be 'within the course of [his] employment continuously during the trip, except when a distinct departure on a personal errand is shown.'" *Id.* (quoting *Smith & Johnson Inc. v. Eubanks*, 374 So. 2d 235, 237 (Miss. 1979)).

---

[1] Because the Commission did not make its own findings of fact but instead affirmed and adopted the AJ's order, we examine the AJ's findings of fact in determining whether the Commission's actions were based on substantial evidence. *McDowell v. Smith*, 856 So. 2d 581, 585 (¶10) (Miss. Ct. App. 2003).

¶19.    In *E & M Motel Management Inc. v. Knight*, 231 So. 2d 179, 182-83 (Miss. 1970), the

Mississippi Supreme Court articulated the test for compensability when an employee's travel

has a dual purpose (the "dual-purpose test"), as follows:

> If the work of the employee creates a necessity for travel, he is in the course
> of his employment, though he is serving at the same time some purpose of his
> own. If, however, the work has had no part in creating the necessity for travel,
> if the journey would have gone forward though the business errand had been
> dropped, and would have been canceled upon failure of the private purpose,
> though the business errand was undone, the travel is then personal, and
> personal the risk.

(Citation and internal quotation mark omitted.). *See Durr's Dependents v. Schlumberger Oil*

*Well Surveying Corp.*, 227 Miss. 606, 614, 86 So. 2d 507, 509 (1956).

¶20.    Applying these principles to the facts before it, the AJ found as follows:

> [Sims] . . . alleges the motor vehicle accident arose out of and in the course of
> his employment because it occurred on or immediately adjacent to his business
> route from Cliburn Tank Lines to his home office in Crystal Springs. But it is
> undisputed that [Delta Fuel] provided [Sims] with a truck equipped with a
> computer and a printer, and that he could have printed the form on the printer
> in his truck. He did not need to detour to Crystal Springs to retrieve a hard
> copy of the form from his home office. *Thus, [Sims's] travel to Huckleberry*
> *Hill was not on or near his business route for the reason that he had to go to*
> *Crystal Springs to retrieve a form before traveling to south Jackson to*
> *complete his last work task of the day*.

> [Sims] also alleges the motor vehicle accident arose out of and in the course
> of his employment because it occurred during travel to accomplish a second,
> separate business mission: the delivery of a product list to his brother Rodney
> at Huckleberry Hill. As noted above, [Sims] traveled to Huckleberry Hill on
> October 21, 2016 to accomplish (a) the personal mission of delivering a four
> wheeler to his brother Rodney and (b) the business mission of delivering a
> product list to his brother Rodney.

> * * * * *

> In this case, [Sims] needed to deliver the four-wheeler to [his brother,] Rodney

8

on Friday afternoon [at Huckleberry Hill]. Rodney needed the four-wheeler so he could stage the equipment on Friday afternoon that the family would need to plant food plots on Saturday morning. *But [Sims] did not testify and there is no evidence to support a finding that his business mission of delivering the product list to Rodney would have compelled the journey if his personal mission of delivering the four-wheeler had been cancelled.* He did not need to personally deliver the product list to Huckleberry Hill on Friday afternoon. He could have delivered the list to Rodney when they had dinner together Friday evening or when they met the next morning at Huckleberry Hill. Sims specifically testified he did not have time to discuss the product list with Rodney on the afternoon of October 21st because he still had to complete a work task in Jackson by 5:00 the same afternoon, and he instead planned to talk to Rodney about the product list on Saturday, October 22nd.

Even if [Sims] had needed to deliver the product list to Rodney on Friday afternoon, he could have electronically transmitted the rewritten list to Rodney. He testified he often sent lists to Rodney by attaching photographs of them to emails or text messages: "If it was something I needed Rodney's help on, I would either email it to him, take a picture of it with my phone, text it to him or whatever - ." [Sims] would not have traveled southwest on Highway 469 for more than thirty minutes to and from Huckleberry Hill to personally deliver a list to Rodney that he could have sent by email or text message, especially since he still had work to complete in south Jackson by 5:00 the same afternoon.

(Emphasis added).

¶21.   After reciting these facts, the AJ observed that "the dual[-]purpose test is not met in this case." In particular, "[h]ad [Sims's] personal mission been cancelled, his business mission alone would not have compelled the journey to Huckleberry Hill. He would have sent the product list to Rodney electronically and taken Highway 49 North from Cliburn Tank Lines to south Jackson to complete his last work task of the day." The AJ concluded that Sims's "travel to Huckleberry Hill on the afternoon of October 21 . . . was not on a direct business route between Cliburn Tank Lines and Crystal Springs, and [Sims] otherwise did not have a business mission compelling his travel to Huckleberry Hill on that date."

Accordingly, the AJ found that Sims's October 21, 2016 motor vehicle accident "did not arise out of and in the course and scope of his employment, as required by the definition of 'injury' contained in Mississippi Code Annotated section 71-3-3(b), [and] his [heart attack] on October 22, 2016, is not compensable as a natural consequence of a work-connected injury."

¶22. We find that the AJ's order, affirmed and adopted in full by the Commission, is supported by substantial evidence and that the dual-purpose test was properly applied. Sims relies on the *Knight* decision in asserting that the Commission's order should be reversed, but we find that *Knight* is distinguishable. In that case, Knight, who was a manager of a Holiday Inn in Tupelo, Mississippi, was required to attend the Holiday Inn national convention in Memphis, Tennessee. *Knight*, 231 So. 2d at 180. Instead of traveling the most direct route home at the conclusion of the conference, by way of Highway 78, Knight opted to stop for an overnight stay in Holly Springs and then travel an alternate route on Highway 72 to Corinth for a visit with his grandchild and to check on a business sign for his employer before returning to Tupelo on Highway 45. *Id.* Knight was involved in a fatal accident while traveling between Holly Springs and Corinth. *Id.*

¶23. The supreme court found that the travel to Corinth was for a dual purpose—one of a personal nature (to visit Knight's grandchild) and for a second business purpose (to check on the Holiday Inn business sign). *Id.* at 183. Applying the dual-purpose test, the supreme court concluded that Knight's decision to return to Tupelo by way of Corinth was in furtherance of his business purpose and that seeing his grandchild was merely incidental to

10

the business purpose. *Id.* In particular, the supreme court observed that Knight's duties "included the checking of business signs, as he would have done at Corinth. . . . But for the business in Memphis which created the necessity for travel, he would not have incurred the risk that resulted in his death." *Id.*

¶24.  In contrast, the AJ in this case, based upon the facts before her, made the opposite conclusion. First, the AJ did not find credible Sims's purported business purpose of traveling on Highway 469 to go to his home office in Crystal Springs to get a form he needed for his final visit to Partridge Sibley in south Jackson. As the AJ observed, "it is undisputed that [Delta Fuel] provided [Sims] with a truck equipped with a computer and a printer, and that he could have printed the form on the printer in his truck. He did not need to detour to Crystal Springs to retrieve a hard copy of the form from his home office." The AJ is "the ultimate fact-finder and judge of the credibility of the witnesses[—]this Court may not reweigh the evidence before the [AJ]." *Gregg*, 64 So. 3d at 475 (¶8).

¶25.  Second, the AJ found that Sims's other purported business purpose, to drop off the product list with his brother at Huckleberry Hill, was "merely incidental" to Sims's personal mission to deliver the four-wheeler. In short, Sims's personal mission created the travel risk he encountered on Highway 469, and thus his injuries were not compensable. As the AJ found, the product list could have been delivered to Rodney electronically, in person on Friday night when they met for dinner, or on Saturday morning when they met at Huckleberry Hill. Absent the personal mission of delivering the four-wheeler, the business mission would not have placed him south of his previous sales call on Highway 469 when the motor vehicle

11

accident occurred. Rather, he would have continued north on Highway 49 from Florence to Jackson to complete his final task at Partridge Sibley in south Jackson. Under the dual-purpose test, the motor vehicle accident did not occur in the course and scope of Sims's employment.

¶26.    *National Bankers Life Ins. Co. v. Jones*, 244 Miss. 581, 145 So. 2d 173 (Miss. 1962), supports this analysis. The evidence before the AJ in this case shows that although Sims testified about his intent to accomplish both a personal and a business mission, the trip on Highway 469 would not have been made but for the personal mission. Similarly, in *Jones*, 145 So. 2d at 174, Jones traveled from Greenville, Mississippi, to Jackson, Mississippi, to retrieve his personal automobile from a repair shop. After retrieving his car, he called on a client, collected an insurance premium, and tried to sell a new insurance policy before leaving Jackson. *Id.* On his route home, he was involved in a motor vehicle accident that resulted in injuries. *Id.*

¶27.    The Commission determined, and the Court upheld, that had the business mission been cancelled, the claimant would have gone forward with the personal mission to retrieve his automobile. *Id.* Thus, under the dual-purpose test, the injuries were not compensable under the Act. *Id.* at 175. The same is true in this case. If Sims had not intended to leave the product list at Huckleberry Hill, he still would have made the trip for the personal purpose of delivering the four-wheeler. Sims acknowledged this intent at the hearing, and his brother substantiated the same. Nor did the AJ find Sims's testimony credible that he was on Highway 469 to obtain a form from his home office in Crystal Springs, when Sims had

company-provided computer and portable printer in his vehicle from which he could have printed the form. There is substantial evidence to support the AJ's determination that the motor vehicle accident was a personal risk and was not in the course or scope of Sims's employment.[2]

¶28. The AJ, as the finder of fact, concluded there was evidence of both personal and business missions for Sims's travel to Huckleberry Hill on the day of the motor vehicle accident. As we addressed above, the AJ appropriately applied the dual-purpose test to the facts before her. In so doing, the AJ concluded that but for the personal mission, the travel would not have gone forward, and Sims would not have encountered the risk that resulted in his injuries. Because the risk of travel was personal, the AJ further concluded that Sims was not in the course and scope of his employment at the time of the accident, and therefore he was not entitled to benefits under the Mississippi Workers' Compensation Act. Because substantial evidence exists to support these findings, and in the light of the "substantial deference" we must give to the AJ's findings of fact, *Applequist*, 161 So. 3d at 1140 (¶17), we affirm.

¶29. **AFFIRMED.**

---

[2] Sims also asserts that the AJ erred because she did not acknowledge a presumption that a traveling employee is in the course and scope of his employment. We find no merit in this assertion. The applicable principle is that "from the time a traveling employee leaves home on a business trip until his or her return, the employee is within the course of employment for workers' compensation purposes. *This is so unless the worker has deviated from his or her work task or is on a personal errand*." *Applequist*, 161 So. 3d at 1138 (¶10) (emphasis added) (citation and footnote omitted). In this case, the AJ properly applied the dual-purpose test and, as the finder of fact, determined that the risk of Sims's travel was personal and thus non-compensable. As we have discussed, substantial evidence supports this determination, and we therefore affirm.

**BARNES, C.J., GREENLEE, TINDELL, LAWRENCE AND C. WILSON, JJ., CONCUR. J. WILSON, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. McDONALD, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. WESTBROOKS, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY McDONALD AND McCARTY, JJ.**

**WESTBROOKS, J., DISSENTING:**

¶30. The majority relies heavily on the standard of review concerning findings of fact. While that standard of review is correct for cases solely involving a review of the facts, this case is also about the application of the law to those facts. Whether the AJ (and subsequently the Commission in affirming and adopting the AJ's decision) made the proper legal determination in the application of the dual-purpose test to the facts of this case requires a de novo standard of review. *Gregg v. Natchez Trace Elec. Power Ass'n*, 64 So. 3d 473, 475 (¶9) (Miss. 2011). Under that standard of review, the application of Mississippi precedent dating back to the 1950s requires us to reverse and find that Sims was in the course and scope of his employment as a traveling salesman at the time of the subject accident. For those reasons, and as discussed in detail below, I respectfully dissent.

¶31. "This Court's review of a decision of the Workers' Compensation Commission is limited to determining whether the decision was supported by substantial evidence, was arbitrary and capricious, was beyond the scope or power of the agency to make, or violated one's constitutional or statutory rights." *Id*. at (¶8). As stated, though, "[the reviewing] Court affords de novo review to the Commission's application of the law." *Id*. at (¶9).

¶32. It is well-settled that workers' compensation benefits are the "exclusive" remedy for workers injured in the course and scope of their employment. *Fortner v. Speciality*

14

*Contracting LLC*, 217 So. 3d 736, 741 (¶13) (Miss. Ct. App. 2017). "The singular purpose pervading the Worker's Compensation Act is to promote the welfare of laborers within the state." *Big "2" Engine Rebuilders v. Freeman*, 379 So. 2d 888, 889 (Miss. 1980). "As remedial legislation to compensate and make whole . . . it should be construed fairly to further its humanitarian aims." *Id*. (citation omitted). "The statutory language 'arising out of' and 'in the course of' creates a requisite for compensability." *Id*. at 890. As Justice Waller further explained for a unanimous Supreme Court, "[t]here is a broad public policy behind the Act to provide the necessary treatment to restore the injured worker to health and productivity." *Smith v. Commercial Trucking Co.*, 742 So. 2d 1082, 1087 (¶13) (Miss. 1999) (quoting *White v. Hattiesburg Cable Co.*, 590 So. 2d 867, 870 (Miss. 1991)).

¶33.    At issue before this Court is whether or not Sims, being employed as a traveling salesman by Delta Fuel, was within the course and scope of his employment at the time of the subject accident. "[W]here [the employee] might properly have been in the performance of his duties during the hours of his work, in the absence of evidence that he was not engaged in his master's business, there is a presumption that the accident arose out of and in the course of the employment." *Bryan Bros. Packing Co. v. Murrah's Dependents*, 234 Miss. 494, 500, 106 So. 2d 675, 677 (1958). As such, traveling salesmen like Sims are presumed in the course and scope of employment until they return home. As this Court stated, "the employee remains in the course of his employment from the time he leaves home until he returns unless the employee deviates from his employment." *Total Transp. Inc. v. Shores*, 968 So. 2d 456, 461 (¶8) (Miss. Ct. App. 2006). "A mere deviation or departure by an

15

employee from employment duties does not in and of itself constitute such a departure as to relieve an employer from liability for the employee's act on the ground that the employee has deviated from his service." *Id*.

¶34. With specific respect to traveling salesmen such as Sims, whether an employee's actions defeat the broad liability and compensability presumption is analyzed by the dual-purpose test, which is specific and has been outlined by our Supreme Court:

> **If the work of the employee creates the necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own.** If, however, the work has had no part in creating the necessity for travel, if the journey would have gone forward though the business errand had been dropped, and would have been cancelled upon failure of the private purpose, though the business errand was undone, the travel is then personal and personal the risk.

*E & M Motel Mgmt. Inc. v. Knight*, 231 So. 2d 179, 182-83 (Miss. 1970) (emphasis added) (citation omitted).

¶35. In *Knight*, the circuit court reversed the Commission's denial of benefits in favor of compensation. *Id*. at 180. Knight was a manager of a Holiday Inn Motel in Tupelo. He attended a Holiday Inn National Convention in Memphis with his wife and was returning home to Tupelo. *Id*. Knight elected to return to Tupelo by way of Corinth so that he could visit his grandchild. *Id*. While in Corinth, Knight was planning to check on a sign on a lot in Corinth owned by Holiday Inn and where a motel was to be built in the future. *Id*. Knight was killed in a car accident that occurred before he and his wife got to Corinth. *Id*. at 181. In affirming the circuit court's reversal of the Commission's decision, our Supreme Court stated that "[s]ince no directions were specified by his employer as to the route to be taken while

16

going to and returning from conventions, the deceased was allowed to choose the route he desired." *Id*. at 180. With regard to the dual-purpose test cited above, the Supreme Court refused to analyze Knight's travel in parts, opting instead for a bookend approach to the analysis:

> In applying the foregoing authority to the present case **the solution must be ascertained by considering the entire trip from Tupelo to Memphis and the return - not by limiting consideration to that fractional part of the trip from Holly Springs to Corinth.** When viewed as a whole, we conclude that because the trip to Memphis and the return to Tupelo was primarily a business trip, Knight's decision to return by way of Corinth to see his grandchild was merely incidental to the business purpose of the trip. Considered in isolation, the Corinth stopover while returning to Tupelo was primarily personal to Knight; but when considered in relation to the whole trip that originated in Tupelo and would have ended in Tupelo had Knight not been killed, the personal mission is incidental only.

*Id*. at 183 (emphasis added). Additionally, the Court noted that "[Knight] traveled when he deemed it necessary and chose the routes by which he would travel." *Id*.

¶36.    After *Knight*, the Supreme Court affirmed a circuit court's reversal of the Commission's and AJ's denial of benefits in *Smith & Johnson Inc. v. Eubanks*, 374 So. 2d 235, 235 (Miss. 1979). Eubanks lived in Louisville but was working on a construction job in Tupelo. *Id*. He was provided a company truck and stayed overnight during the week at a hotel in Tupelo. *Id*. After the work day was over, Eubanks was planning to drive to the town of Shannon to eat with a cousin and then return to his hotel in Tupelo later that night. *Id*. at 236. Before arriving at his cousin's house in Shannon, Eubanks was killed in a motor vehicle accident. *Id*. Eubanks was intoxicated at the time of the accident and driving his company vehicle. *Id*. at 236-37. In affirming the finding of benefits, the Supreme Court again held

17

fast to the bookend approach outlined in *Knight* by stating that "Eubanks, in reality, was 'at work' from the time he left his Louisville home until he returned." *Id*. at 238.

¶37. Less than a year after *Eubanks*, the Supreme Court again affirmed an award of benefits to a traveling salesman who was injured while traveling, even though at the time of the injury, the salesman was not "selling" anything. *Big "2" Engine Rebuilders v. Freeman*, 379 So. 2d 888, 889-90 (Miss. 1980). In *Freeman*, the employee-salesman was leaving one sales call and heading to another sales call when he stopped to help what appeared to be a man in distress on the side of the road. *Id*. at 889. Unfortunately, the man was not in distress and pulled a gun on Freeman. *Id*. Freeman was beaten over the head and left with permanent injuries and disability. *Id*. at 890. The Court reiterated the dual-purpose test was to be used "with respect to traveling salesmen in particular." *Id*. The Court further re-emphasized its previous holdings by stating again that "the activity of the traveling salesman is not to be lifted from the perimeters of his employer's mission and viewed in isolation but must be viewed in its context as a whole." *Id*.

¶38. Following the interpretational guidelines provided by the Supreme Court for cases involving traveling salesmen and the dual-purpose test, this Court in *Financial Institute Insurance Service v. Hoy*, 770 So. 2d 994 (Miss. Ct. App. 2000), affirmed compensation for a traveling saleswoman injured after slipping and falling in a hotel room at night after shopping and eating dinner. *Id*. at 996 (¶¶1-2). Following the holdings in *Knight*, *Eubanks*, and *Freeman*, this Court said specifically that we are to "look to the law that speaks to traveling employees." *Hoy*, 770 So. 2d at 998 (¶9). With regard to such employees, this Court

18

took the same bookend approach as the Supreme Court by stating, "[W]hen the business or work of an employee necessitates travel, then the employee will be covered from the time that he leaves home until such time he returns home." *Id*. In addressing the temptation to view the trip in parts or isolation, this Court stated that "we cannot ignore the test set out by the above cases specifically addressing the standard for traveling employees." *Id*. at 999 (¶12). This Court, responding to the carrier's focus on the specific activity at the time of the accident, followed the precedent set forth by the Supreme Court in stating that "we must not limit our consideration to a fractional part of the trip taken by Hoy, such as using the bathroom. Rather, we must look to the entire trip as a whole with all fractional parts included." *Id*. Looking at Hoy's trip as a whole, the Court found the injury Hoy sustained in her hotel bathroom compensable and specifically held that "[t]he fact that Hoy ate dinner, went shopping at a local mall, slept in a hotel, went to the bathroom and slipped and fell on the wet carpet of the hotel room do not turn this trip into one of private and personal business." *Id*.

¶39.    Not long after *Hoy*, this Court again addressed compensation benefits regarding a traveling salesperson injured during an incident connected with travel. In *Houston ex rel. Houston v. Minisystems Inc.*, 806 So. 2d 292 (Miss. Ct. App. 2001), this Court reversed the circuit court's reversal of the Commission and reinstated benefits awarded to Houston.  *Id*. at 293 (¶¶1-2). Houston was employed as a traveling saleswoman with MiniSystems. *Id*. at (¶3). She utilized a company car at all times. *Id*. She had no set schedule or route. *Id*. Her hours were flexible, and she worked at all times needed. *Id*. After leaving Sardis heading to

19

a scheduled sales call in Columbus, she stopped in Oxford. *Id*. at (¶4). While in Oxford, she called the client and was informed the appointment had been cancelled. *Id*. She next called her daughter, who lived in Pleasant Grove, which is ten miles west of Sardis. *Id*. She left her daughter's home after visiting around 3:00 p.m. *Id*. Before reaching Sardis, Houston was killed in a car accident. *Id*. She was not in her sales territory at the time of the accident. *Id*. at 293-94 (¶4). In reiterating the principles set forth in decades of Mississippi precedent, this Court stated that "compensability is not a function of the points on a compass nor numbers of miles, nor particular routes. It is a function of the nature of the activities in which the claimant was engaged at the time of the accident." *Id*. at 294 (¶8). Specifically with regard to Houston, this Court stated further that it is "simply drawing too fine a line to say that if Mrs. Houston were killed four miles from the office while driving the company car from the south and east after eating lunch, the accident was compensable, but not compensable if she were killed while driving four miles from the west." *Id*.

¶40.    Mississippi cases involving the dual-purpose test and an analysis finding against benefits are rare and in no way factually similar to the case currently before this Court. In *Durr v. Schlumberger Oil Well Surveying Corp.*, 277 Miss. 606, 86 So. 2d 507 (1956), the Supreme Court affirmed the denial of benefits. *Id*. at 611-12, 615, 86 So. 2d at 507, 509. In *Durr*, the employee had specifically asked for and received permission from his supervisor to take personal leave time from work to handle personal matters. *Id*. at 612, 86 So. 2d at 508. Specifically, Durr was moving some of his wife's personal belongings. *Id*. Durr did not use a company vehicle, but instead he used his own vehicle which was strictly prohibited by

20

his employer for any employee while on company business. *Id*. The only remote connection to Durr's employment was the presence of some old files found in his vehicle at the time of the accident. *Id*. at 613, 86 So. 2d at 508. Applying the dual-purpose test, the Supreme Court stated that the "files had nothing to do with creating the necessity for the trip. The travel and the risks were personal." *Id*. at 615, 86 So. 2d at 509.

¶41.     Six years after *Durr*, in 1962, the Supreme Court decided to deny benefits in *National Bankers Life Insurance Co. v. Jones*, 244 Miss. 581, 145 So. 2d 173 (1962). Just as the facts in *Durr* were clearly distinguishable from the line of cases finding coverage, so too were the facts in *Jones* equally outside the bounds of coverage: Jones was a district manager for an insurance company. *Jones*, 244 Miss. at 584, 145 So. 2d at 173. The company did not supply him a company vehicle. *Id*. Jones was not reimbursed for travel expenses, and Jones was not exclusively a traveling salesman of the type common in dual-purpose analysis. *See id*. at 587, 145 So. 2d at 175. Most importantly, there is no dispute that Jones's travel to Jackson was created by a personal mission. *Id*. Jones's personal car broke down a week earlier when he was visiting his family. *Id*. at 584-85, 145 So. 2d at 174.  He left his personal car in Jackson to be repaired. *Id*. at 585, 145 So. 2d at 174. He returned to Jackson for the express intent of picking up his newly repaired personal vehicle. *Id*. The personal mission created his travel. *Id*. The majority relies upon *Jones* as support for its decision to affirm the AJ's denial of benefits to Sims, but *Jones* is not comparable to the case at bar. Sims's work created the need for travel which began in Star. Unlike Jones, Sims drove a company vehicle at all times–not a personal vehicle. The care and maintenance of Sims's company truck was handled by Delta

21

Fuel. Sims was actively in the middle of his work day when he had the subject accident. Unlike Jones, Sims did not leave the house that morning for the personal errand of picking up his personal car from the repair shop. Sims left his house that morning in the company truck and began calling on clients and doing his job in Star.

¶42.     Another case, *Total Transportation Inc. v. Shores*, 968 So. 2d 456 (Miss. Ct. App. 2006), resulted in a denial of benefits regarding a truck driver who was shot and killed after leaving a bar. *Id*. at 460 (¶¶3-5). The AJ and Commission awarded benefits, and the circuit court affirmed. In reversing in favor of the employer, this Court stated that it was "unpersuaded by that statement as Mr. Shores chose to drink large amounts of alcohol and only left the bar because it was closing." *Id*. at 464 (¶12). Further this Court pointed out that Shores had left his wife and truck after getting into an argument with her and Shores chose to spend eleven hours drinking. As this Court stated, it was "no mere dinner break." *Id*.

¶43.     Applying over six decades of specific and clear Mississippi precedent to the facts in this case provides a clear path to concluding that Sims was within the course and scope of his employment at the time of the subject accident. He was in the middle of his work day and driving a company truck–not a personal vehicle–at the time of this accident. As we were reminded by *Fortner*, workers' compensation benefits are Sims's exclusive remedy. Further, as in *Big "2" Engine Rebuilders v. Freeman*, 379 So. 2d 888 (Miss. 1980), the intent behind workers' compensation legislation is to find in favor of compensation and further its humanitarian aims. *Id*. at 889. *Freeman* even reminded us there is a near requisite for compensation. *Id*. at 890. *Smith* specifically talked about a broad public policy in favor of

22

finding compensability. *Smith*, 742 So. 2d at 1087 (¶13). But as previously outlined, our caselaw does not stop there.

¶44.    Workers travel for a host of reasons, and *Bryan* reiterates the principle that there is a presumption that accidents that occur during travel are work-related. *Bryan*, 234 Miss. at 501, 106 So. 2d at 677-78. Sims was not just an employee who spent ninety-nine percent of his time in an office and only traveled for work once a year. Sims was a traveling salesman. He spent virtually all of his time "at work" in his company truck. Perhaps it is easier to associate this class of employees in the medical or insurance sales context, but Sims was a member of such a class. As *Shores* pointed out, Mississippi caselaw provides more clarity with regard to traveling salesmen like Sims. As a traveling salesman, Sims was in the course and scope of his employment from the time he left his home and until his return.

¶45.    Traveling salesmen like Sims are permitted to accomplish personal tasks while remaining within the course and scope of their employment as outlined in *Knight*, which told us when questions arise, the dual-purpose test is used: "[i]f the work of the employee creates the necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own." *Knight*, 231 So. 2d at 182-83. We are guided even more specifically by *Knight* with regard to how we should apply the dual purpose test. We must look at "the entire trip." *Id*. at 183. Appellate courts like ours cannot, with the benefit of subjective hindsight, look solely to the actions of the employee at the time of the accident.

¶46.    Further, we were reminded by *Knight* that salesmen like Sims do not have a required route. The very nature of Sims's job made his travel unpredictable and constantly changing.

*Eubanks* reiterated this specific guidance gleaned from *Knight*. Following the broad coverage enumerated by *Knight*, *Eubanks*, and other cases regarding traveling salesmen, the Supreme Court again specifically pointed out these principles in favor of compensation in *Freeman*. In that opinion, we were reminded that the dual-purpose test was to be used specifically with respect to traveling salesmen and that "the activity of the traveling salesman is not to be lifted from the perimeters of his employer's mission and viewed in isolation but must be viewed in its context as a whole." *Freeman*, 379 So. 2d at 890.

¶47.    *Hoy* directed us that employees like Sims are "covered from the time that he leaves home until such time he returns home." *Hoy*, 770 So. 2d at 998 (¶9). *Hoy* also stated that we cannot ignore cases "specifically addressing the standard for traveling employees." *Id*. at 999 (¶12). *Hoy* specifically reiterated what previous decisions held: that we cannot look "to a fractional part of the trip." *Id*. With *Houston*, this Court followed suit by noting there was not a required route and that **whether or not the sales call was successful or even happened** made no bearing on compensability. *Houston*, 806 So. 2d at 293-94 (¶¶2-4).

¶48.    The cases applying the dual-purpose test resulting in a finding that the traveling salesman was outside the course and scope of employment do not cancel out the precedent cited and discussed above, nor do they make such an attempt. *Durr*, which was decided in 1962, involved an employee who was on personal leave at the time of the accident. *Durr*, 277 Miss. at 612, 86 So. 2d at 508. Specifically, Durr requested personal time off of work to handle a personal matter and used his personal vehicle. *Id*. Likewise, *Jones* involved personal travel and a personal vehicle. *Jones*, 244 Miss. at 585, 145 So. 2d at 174. Neither case

overturned or even argued against the clear guidelines provided by *Knight*, *Eubanks*, *Freeman*, *Hoy*, and *Houston*.

¶49.    It is undisputed that Sims was working, had already been on at least one scheduled sales call, and had another one in Jackson at 5:00 p.m. While Sims's testimony that he was dropping off a four-wheeler at his brother's property might tempt us to ignore the work-related nature of the travel, the fact remains that Sims was also going to attempt to leave his brother an easier-to-read version of a product list. This was part of Sims's job whether he had the four-wheeler in his truck or not. His brother did not have to be there for Sims to accomplish this mission, and there has been no authority cited adding such a requirement to someone in Sims's line of work.  Salesmen or sales representatives are by design different, and the precedent cited above understands and specifically accommodates that fact. Salesmen routinely make cold calls on prospective and existing customers. Salesmen often makes numerous trips to a prospective or existing customer without appointment or success or even seeing the intended person at all, yet they remain safely in the course and scope of their employment.

¶50.    Reviewing over sixty years of specific Mississippi precedent regarding traveling salesmen like Sims mandates that Sims was within the course and scope of his employment with Delta Fuel at the time of the subject accident. Sims was leaving a sales call at Cliburn Tank Lines in Star, and he had to be in Jackson by 5:00 p.m. to complete a scheduled task at Partridge Sibley. No evidence or testimony was offered to dispute that Sims's work day would not end, at the earliest, until after he finished checking the lines at Partridge Sibley in

Jackson around 5:00 p.m. Work created the necessity for Sims's travel. Sims would have still been traveling for work had the personal errand not been planned. The analysis could stop there, as Sims's work day was not over and would not be until at least 5:00 p.m. That being said, delivery of the four-wheeler, had Sims actually made it to his destination, would have been incidental to the work-related tasks. Sims was going to attempt to go over a product list with his brother Rodney. The personal business of delivering the four-wheeler was not the reason for his travel at any part of the day. There was no evidence offered disputing that Sims was working and was intending to keep working, even while dropping off the four-wheeler. There is no requirement, statutory or otherwise, that salesmen must complete the intended task to be considered within the course and scope of their employment.

¶51. The precedent is clear. Sims was within the course and scope of his employment no matter how these facts are viewed because the law is clear. As such, I would reverse and remand this case for further proceedings to determine what injuries and damages are connected to this work-related accident. For the foregoing reasons, the decision of the Commission affirming the AJ's denial of benefits should be reversed, and this case should be remanded for proceedings consistent with controverting a compensable claim. For these reasons, I dissent.

**McDONALD AND McCARTY, JJ., JOIN THIS OPINION.**